### FOREMAN et al. v. HILTON CO., Inc.

(Circuit Court of Appeals, Seventh Circuit. February 23, 1922.)

Nos. 3069, 3070.

1. **Landlord and tenant ⬄93—Reserved right to terminate lease.**

Under a lease giving lessors the right to terminate, before expiration of term, if they "shall desire to make a 99-year lease * * * or shall desire to sell or rebuild the building now upon said premises," the making of a 99-year lease was not a prerequisite to cancellation, but only a genuine and purposeful desire, and the making of a lease for 99 years, though with an option to lessee to cancel after 15 years, *held* sufficient.

2. **Landlord and tenant ⬄94(4)—Service on employé on demised premises of notice of termination of lease held sufficient.**

Under a lease requiring lessors to "serve a written notice" on lessees of the exercise of an option to terminate the lease, delivery of a copy of such notice to the employee on the demised premises in apparent authority *held* sufficient, where during more than two weeks preceding expiration of the time for service unavailing efforts had been made to find and serve lessees personally.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action at law by the Hilton Company, Inc., against Winfield A. Foreman and Loren O. Foreman. Judgment for plaintiff and defendants bring error. Affirmed.

There is here involved right of possession after April 1, 1921, under two leases covering together the second, third, and fourth floors, part of basement,

and 25 feet front on State street side of first floor, of the five and six story building on northwest corner of State street and Jackson boulevard, Chicago, agreed to be used only as a clothing store by lessee, a partnership. The term of the leases was 10 years, beginning April 1, 1916, and the clause of the leases under which the controversy arises is: "It is further mutually understood and agreed that, if the parties of the first part shall desire to make a 99-year lease on said property, or shall desire to sell or rebuild the building now upon said premises, the parties of the first part shall have, and they are hereby given, the right and option to terminate said term and cancel this lease on the 30th day of April, 1921, provided that they shall on or before the 1st day of November, 1920, serve a written notice on the parties of the second part, stating in said notice that they have exercised their said option to cancel and terminate said lease, and provided further that they shall pay to the parties of the second part at the time of the service of said notice the sum of twenty-five thousand ($25,000) dollars." The amount stated appears in one of the leases; the amount in the other is $5,000.

In 1920, or earlier, the lessors, being desirous of making a 99-year lease of the entire building and premises (having total frontage on State street of 120 feet), in the early part of that year entered into negotiations with defendant in error for such lease. The negotiations, which were carried on by brokers, continued, for most of the year, culminating September 29, 1920, in the execution of such lease, whereby lessors leased the entire building and premises to defendant in error for a term of 99 years, the lease containing a proviso that at the end of the first, 15 years of the term, lessees may terminate the lease by giving to lessors notice of intention so to terminate not less than 6 months before the end of the 15 years.

Plaintiffs in error were nonresidents of Illinois. Their Chicago store was one of many they were running in various large cities from coast to coast. They had offices in New York and Los Angeles, and a large Eastern factory, and their presence at Chicago was intermittent and uncertain. On October 13, 1920, lessor undertook to serve upon plaintiffs in error notice of termination of the two first-named leases, pursuant to the quoted clauses therein, and to deliver the $30,000 as provided, and they persisted in such effort to and including November 1. Repeated calls by phone and in person at the demised premises failed to locate lessees. Visits were made to a hotel at Chicago where lessee W. A. Foreman had for a short time been stopping, but he could not be located. The notice and money were brought to the premises and offered to one or more of lessees' employees there in apparent authority or charge, but were refused. Notice was finally left at the office there with a cashier and telephone operator, and one or more of the employees then present and in apparent charge was informed of its nature, though they had refused to take physical possession of notice or money. The money was deposited in one of the leading Chicago banks, and a letter, addressed to lessees, sent by an officer of the bank, informing lessees that the money had been left there for them, as payment on termination of the lease.

Defendant in error, learning that the principal office of the partnership was at Los Angeles, Cal. (where they had two stores), sent a messenger there with a notice and $30,000 in cash, but on diligent search and inquiry, assisted by detectives, was unable to find plaintiffs in error there, and at one of the stores he left a similar notice with, and tendered the money to, an employee of lessees in apparent charge of the store, explaining the object and purpose; but this person declined to receive it. A registered letter containing a notice, with a statement of the various attempts to serve it and tender the money, and notification that the money had been deposited with the bank, so that plaintiffs in error might get it, was sent to the tenant, addressed to the demised premises, but was returned as having been refused. All this took place prior to November 1, and on the afternoon of that day persons in the employ of the tenants brought back, apparently unopened, the notice which had a few days before been left at the office on the demised premises. From October 13, until some days after November 1, plaintiffs in error were absent from Illinois. They testified they were, when absent, in frequent, perhaps daily, communication with the Chicago store, but that up to about a week after November 1 they had no knowledge or intimation that the lessor was desirous

of terminating the lease or of serving notice of termination or paying the specified amount. At the close of all the testimony the court directed the jury to return a verdict for defendant in error.

Henry Russell Platt, of Chicago, Ill., for plaintiffs in error.

W. B. Hale, of Chicago, Ill., for defendant in error.

Before BAKER and ALSCHULER, Circuit Judges, and LUSE, District Judge.

ALSCHULER, Circuit Judge (after stating the facts as above). The action of the District Court is assailed upon two grounds: (1) That the evidence does not show there was a 99-year lease made; and (2) that the tender and service of notice were insufficient to warrant cancellation of the lease. Involved in both propositions is the contention that there was contradictory evidence respecting questions of fact, and that it was improper to direct the verdict.

[1] The cancellation clause, by its terms, became operative if the lessors "shall desire to make a 99-year lease, * * * or shall desire to sell or rebuild the building now upon said premises." In neither contingency was the consummation of the desire a prerequisite; indeed, as to rebuilding, it could not well have been. All that was required is that in good faith they shall definitely have the indicated desire. It must, of course, be a desire, not in the abstract or a mere hope or longing; but it must have taken such definite form as shall indicate that the desire was genuine and purposeful and that it was not a mere sham, for the purpose of terminating the lease. Surely reasonable minds could not differ as to the genuineness of the desire and intent here appearing. A broker was employed, who devoted much time on the subject. Parties were brought together, and the lease negotiated and executed. The desirability of having these exceedingly valuable premises on State street under a single lease is apparent. One of plaintiffs in error testified that some time before he had been spoken to on the subject of a continuance of the tenancy, on the ultimate expiration of the lease, and that on another occasion an agent of the lessor had suggested that a 99-year leasing was being considered. The uncontradicted evidence leaves no room for doubting the desire and definite purpose in good faith to effect such a lease. But it is contended that the clause of defeasance in the 99-year lease indicates that the lease was for 15 years only, with option for 84 years more. While this does not necessarily militate against the conclusion that the lessors were genuinely desirous of effecting a 99-year leasing, this is to all intents a 99-year lease; the lessors binding themselves absolutely for that term, and the lessee likewise binding itself, subject only to its exercise of the right of defeasance when and in the manner prescribed.

[2] Respecting tender and notice it is not disputed that had the lessees willfully evaded the same they could not be heard to complain that they did not receive them. While the facts and circumstances shown point quite unerringly to deliberate evasion of tender and service of notice, plaintiffs in error testified to their entire want of knowledge that tender and service were sought, and that there was no evasion upon their part. So far, therefore, as the validity of the tender and

service might depend upon showing evasion by lessees, the issue of fact thereon could not properly be withdrawn from the jury. The issue of tender and service must therefore be considered upon the assumption that the element of evasion is absent. Were the tender and service under the indicated facts sufficient in law to terminate this tenancy?

Where a right is dependent upon tender of money or deed by one party, the opposite party may not complain of want of such tender where, through his own absence for any cause, the tender to him cannot be made, provided the other party was ready and able and undertook to make the tender, which lacked only the presence of the other party to effect it. Tasker v. Bartlett, 5 Cush. (Mass.) 359; Smith v. Smith, 25 Wend. (N. Y.) 405; Santee v. Santee, 64 Pa. 473; Hale v. Patton, 60 N. Y. 233, 19 Am. Rep. 168.

Where a notice for termination of the tenancy is required by law or agreement to be given by the landlord to the tenant, and no mode of service is pointed out, the notice should in general be given personally to the tenant; but, where the tenant is not present to receive the notice, it may be given by leaving it upon the demised premises with some person there of years of discretion, in the employ of lessees and in apparent authority or agency for them, informing him of the contents of the notice. Blish v. Harlow, 15 Gray (Mass.) 316; Walker v. Sharpe, 103 Mass. 154; Clark v. Keliher, 107 Mass. 406; Wade on Notice, § 640.

If parties contract that the notice must at all hazards and under all circumstances be delivered personally to the tenant himself, such service is essential, because the parties themselves have so agreed. An instance of this is Hogg v. Brooks, 15 L. R. Queen's Bench Div. 256, whereon counsel for plaintiffs in error place much reliance. Here the lease stipulated for its termination after 14 years on lessor's "delivering to the tenant, his executors, administrators or assigns 6 calendar months' notice of their intention so to do." Of this it was said in the opinion, "The court must construe that clause according to the ordinary meaning of the English language," which that court held to mean an undertaking that at all hazards this notice must be delivered to the tenant himself, or the others specified, before the tenancy could be terminated. The requirement that the lessor "serve a notice" on the tenant is quite different from that of delivering it to him. "Serving" notice is not different from "giving" it, and, as has been seen, under statutes or provisions for "giving" notice to the tenant the notice is considered given if, in his absence it is left on the demised premises under circumstances as stated.

The case of Henderson v Carbondale Coal Co., 140 U. S. 25, 11 Sup. Ct. 691, 35 L. Ed. 332 which counsel urge as holding to the contrary, is not in conflict. There the court held that, under the circumstances there pointed out, the mailing of a letter addressed to a tenant was not a compliance with the first part of section 10 of the Illinois Landlord and Tenant Act (Hurd's Rev. St. 1921, c. 80), providing that notices of statutory demands "may be * * * served by delivering a written * * * copy thereof to the tenant."

We are of opinion that the continued absence of plaintiffs in error

for the indicated period of time on and next prior to the last day upon which the stipulated notice might be served on them justified service of the notice by leaving copy upon the demised premises with some employee of lessees there, of mature age, in apparent authority or agency, informing him of the contents, in the manner as appears here to have been done, and that the service of notice here appearing was, under the uncontroverted facts, in law sufficient.

What has been said sufficiently indicates our conclusion that the direction of the verdict did not withdraw from the jury any controverted issue of fact material to the determination of the cause.

The judgment of the District Court is affirmed.