## I. B. Bartkowski, Appellee, v. Albert Hoefeld, Inc., Appellant.

### Gen. No. 27,313.

1. CONTINUANCES—*insufficiency of affidavits and showing for continuance in forcible detainer proceeding.* It is not error in an action for forcible detainer for the trial court to refuse, on the day of trial when plaintiff is ready to proceed, to continue the cause longer than two days or at the expiration of that time to refuse any further continuance because of unreadiness of defendant to proceed, where the affidavits show that the president of defendant, its principal witness, is absent from the city because of ill health and that the attorney who was employed to try the cause is appearing in another court and that the attorney appearing on the motion is not prepared for trial, where there is no showing that any effort has been made to prepare for trial, or as to the nature of the defense, or as to what the absent witness

would testify to if present, or that any material witnesses could not be obtained.

2. VENDUE—*noncompliance with statute as grounds for denying change.* It is not error for the court to deny a change of venue where the supporting affidavit merely avers that affiant, the president of the defendant corporation, "fears that defendant company will not receive a fair trial" before the trial judge in question but does not aver that the judge is prejudiced against defendant or state any cause for the application, and where no notice of the application was given the opposing counsel and no copy thereof served on them.

3. HARMLESS ERROR—*improper remarks of trial judge before jurors harmless where verdict directed against injured party.* Remarks by the trial judge, severely criticising the defendant's attorney for his conduct in handling the cause prior to and during trial, are harmless, though made in the presence of the veniremen and during their examination on their *voir dire,* where the court finally directed a verdict for the plaintiff.

4. FORCIBLE ENTRY AND DETAINER—*proof of detention after demand and termination of lease.* Defendant is shown to have been in possession of the premises at the time of demand therefor under the lease by the lessor and also at the time of commencement of action, by evidence that defendant was in possession two days before the demand was served and that it was also in possession at the time of trial and by an admission of its counsel, during the hearing of a motion in the proceeding, that defendant had been in possession for five years.

5. APPEAL AND ERROR—*waiver of variance in by failure to rely thereon at trial.* Defendant, in an action for forcible detainer after termination of the lease by the lessor under its terms, cannot first raise on appeal the question of variance between the description of the premises as set out in the complaint and plaintiff's lease and that in the lease to defendant, where the variance was not relied on in the trial or there called to the attention of the court or opposing counsel.

6. FORCIBLE ENTRY AND DETAINER—*sufficiency of proof of identity of premises described in complaint.* In an action for forcible detainer of premises after termination of defendant's lease, in compliance with the terms thereof, the premises detained by defendant and which were described in its lease as "Nos. 238 and 240" are shown to be the same as those sued for, though the latter are described in the complaint as "No. 244," where the premises are fully identified in the complaint in plats forming a part thereof, and are admitted by defendant in affidavits in the cause to be the same premises.

7. LANDLORD AND TENANT—*effect of optional right to cancel*

*99-year lease.* The fact that a lease of business property for 99 years contains a provision giving the landlord the right to cancel it on notice at a specified time does not destroy the effect of such lease or the rights of one claiming under the lessee as against a former tenant who forcibly detains possession.

8. New trial—*right of counsel to argue motion for.* It is not error for the trial court to deny a motion for a new trial immediately when made without hearing arguments from counsel in support of the motion, where no prejudice to defendant is shown from such action.

9. Landlord and tenant—*sufficiency of notice to quit under lease.* Under a lease which provided that the landlord should give five days' notice to quit before ending the term for nonpayment of rent, and six months' notice in case he desired to terminate for the purpose of making a lease for 99 years, the landlord was not required to give the five days' notice before terminating the lease to make one for 99 years, there being no default in the payment of rent, and in such case the six months' notice only was sufficient.

10. Foreign corporations—*effect of failure to record certificate in due time.* Failure of a foreign corporation to file, in the proper recorder's office within ten days after its issuance, the certificate to do business within the State, does not invalidate the license of such corporation.

11. Saving questions for review—*necessity for objection below.* The effect of the failure of a foreign corporation to file its certificate licensing it to transact business within the State, in the recorder's office, within ten days after its issuance, will not be considered on appeal where no objection was made in the lower court on that ground to the introduction in evidence of such certificate.

Appeal from the Circuit Court of Cook county; the Hon. David M. Brothers, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Affirmed. Opinion filed October 3, 1922. Rehearing denied October 16, 1922. *Certiorari* denied by Supreme Court (making opinion final).

Newby, Murphy & Walker, for appellant; Adler, Lederer & Beck, of counsel.

Wilson, McIlvaine, Hale & Templeton, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a judgment against the defendant corporation, rendered by the circuit court of Cook county on July 8, 1921, in an action of forcible detainer tried before a jury. At the close of the evidence the court directed the jury to find defendant guilty of wrongfully withholding from plaintiff the possession of the premises in question. They returned such a verdict, and, after defendant's motion for a new trial had been overruled, the judgment followed.

The action was commenced on May 4, 1921. The complaint alleged that plaintiff was entitled to the possession of the following described premises situated in Chicago, Cook county, Illinois, and that defendant unlawfully withheld the possession thereof from him, viz.:

"The ground floor store, *No. 244 South State street,* said store being approximately 19½ feet in width and approximately 43 feet in depth, with an additional space in the rear of Herbert's jewelry store, which additional space is approximately 15 feet square, being the same space now occupied by Albert Hoefeld for use as a men's furnishings retail store, and being the third store north of the corner of Jackson boulevard on the west side of State street. Also that portion of the basement underneath said store and Herbert's jewelry store, rectangular in shape and extending to a depth of about 43 feet west of the west line of State street and about 30 feet wide; which said basement space is also occupied by said Albert Hoefeld for the use of said retail store. All of which said space on said ground floor and basement is in the building known as the Old Hub building, situated at the northwest corner of Jackson boulevard and State street."

On May 21, 1921, after defendant had filed its plea of the general issue, plaintiff made a motion that the court set the cause for trial in the near future, sup-

porting the motion by affidavits showing the need of such action. The hearing of the motion was continued to May 28, at which time said affidavits and also the counter affidavit of Albert Hoefeld, president of defendant corporation, were read, and the court set the cause for hearing on July 6, "without any further continuance." On the day set plaintiff was in court ready for trial with his witnesses. Defendant's attorney, Mr. Walker, for the first time advised the court that defendant was not ready for trial and moved for a continuance and supported his motion by the affidavit of said Hoefeld, sworn to before a notary public of Cook county on July 1, in which it was alleged, in substance, that he, as president of defendant and manager of its business, had handled all matters pertaining to the leases involved in the controversy and was the only representative of defendant who had knowledge of the facts and was an important witness for defendant; that his health had broken down and he was in a nervous condition; that he had recently consulted a physician, who had advised him that he could not participate in the trial and that he must "absent himself from business cares and worries for at least two months or more"; and that on the advice of said physician he had left Chicago on July 1, 1921, "the day and date of this affidavit" (i. e., five days before the date set for the trial). There is no statement in the affidavit as to what Hoefeld would testify to, if present, and no showing of diligence in preparing for trial, or what was the nature of the defense. Defendant's attorney also presented and read a certificate of a physician, dated July 1, to the effect that he had advised Hoefeld to "take a vacation out of town," and also stated that his law partner, Mr. Murphy, who was going to try the cause, was then engaged before another court, and that he (Walker) had been unable to assist in the preparation for the trial on account of the illness of his wife. The court

continued the trial until July 8, and stated that the same must proceed on that date. On July 7 defendant's attorney, Mr. Walker, appeared and made a motion for a change of venue, supported by the petition of said Hoefeld, sworn to before a notary public of Cook county on July 1, in which he alleged that he "fears that the defendant company will not receive a fair trial before this Honorable Court." This petition was sworn to on the same day as Hoefeld's said affidavit for a continuance, and evidently was to be used in case said continuance was not obtained. It was the petition of Hoefeld and not of the defendant and was presented the day after the motion for a continuance had been made, and it did not state that the trial judge was prejudiced against defendant. It did not state any cause for the application and no sufficient notice thereof was given. The court denied the motion.

On July 8 the cause was again called for trial. Plaintiff was again in court with his witnesses. Defendant's attorney, Mr. Walker, again moved for a continuance and filed affidavits of himself and of his partner, Mr. Murphy, setting up certain facts stated by Mr. Walker on the previous motion for a continuance. Neither affidavit stated facts showing that any effort had been made to prepare for trial, or that there was any defense to the action, or that there were any material witnesses who could not be obtained. The court denied the motion. Thereupon Mr. Walker, on behalf of defendant, made a second motion for a change of venue, supporting the motion by the petition of said Hoefeld, sworn to before a notary public of Waukesha county, Wisconsin, on July 7, in which he alleged that he was then at Hartland, Wisconsin (a distance from Chicago of about three hours by rail), "under orders of his physician," that he had engaged Mr. Murphy to try the case for defendant, that Murphy was actually engaged in another trial

when the former motion for a continuance was made, and that he fears that defendant company will not receive a fair trial on account of the prejudice of the trial judge. No previous notice of this second application for a change of venue was given plaintiff's attorneys or any copy of the petition served on them. The petition was presented after the motion for a continuance had been denied; it is the petition of Hoefeld and not of the defendant; it fails to make any explanation of the delay in presenting it, and it mentioned, apparently as ground of prejudice, that the judge had overruled the granting of a continuance longer than two days. There then ensued a long and heated colloquy between the judge and Mr. Walker, defendant's attorney, in which said attorney again asked for a continuance of the cause, resulting in the court denying this second motion for a change of venue and calling a jury and proceeding with the trial. Defendant's attorney then challenged the venire and moved for a new one, on the ground that some of the veniremen had been present and heard the colloquy, and that certain statements of the court would produce prejudice in their minds against defendant. The court denied the motion and the trial proceeded, Mr. Walker examining jurymen and cross-examining plaintiff's witnesses, etc.

Counsel for defendant here contend that the judgment should be reversed because the court erred in refusing on July 6 to grant a longer continuance than two days and also on July 8 in refusing a continuance. In view of the insufficiency of the affidavits supporting the motions, and the facts and circumstances disclosed, the court did not err or abuse its discretion in making the rulings complained of. (*Stringam v. Parker*, 159 Ill. 304, 309; *Condon v. Brockway*, 157 Ill. 90, 92; *Culver v. Colehour*, 115 Ill. 558, 564; *Schlesinger v. Nunan*, 26 Ill. App. 525, 527; *Mantonya v. Huerter*, 35 Ill. App. 27, 28.) Counsel also contend

that the court erred in denying both petitions for a change of venue. We do not think so. Neither petition sufficiently complied with the statutes relative to changes of venue in civil cases. (*North Chicago St. R. Co. v. Leonard*, 167 Ill. 618, 619; *Toledo, W. & W. Ry. Co. v. Maxfield*, 72 Ill. 95, 96; *Hutson v. Wood*, 263 Ill. 376, 381; *Thompson v. American Percheron Horse Breeders' & Importers' Ass'n*, 114 Ill. App. 131, 133; *Binga v. Martin*, 174 Ill. App. 217, 218.)

Counsel also complain that the trial court, on the hearing of the second motions for a continuance and a change of venue in the presence of certain veniremen, and in their examination on the *voir dire*, was guilty of such conduct that the jury must have been prejudiced against defendant. While the remarks of the court regarding defendant's attorney, Mr. Walker, were at times possibly too severe, they were called forth by a course of conduct on his part, which evidently exasperated the court, and which cannot be justified. There were no errors committed in the substance of the court's rulings, and even if the case had been submitted to the jury we could not say that any reversible errors had been committed. (*Chicago City Ry. Co. v. Shaw*, 220 Ill. 532, 536; *Forest Preserve Dist. of Cook County v. Barchard*, 293 Ill. 556, 563.) But, as the court finally directed a verdict in favor of plaintiff, the question as to the effect of the court's actions upon the minds of the jury is immaterial.

The main contention of counsel is that the court erred in instructing the jury to find for the plaintiff..

Plaintiff was a witness in his own behalf. He identified a lease, dated February 11, 1921, executed by him as lessee and by The Hilton Company as lessor, whereby the latter leased to him, from May 1, 1921, to April 30, 1926, the premises known and described as "the ground floor store, *No. 244 South State street*, shown in plat No. 1, attached hereto and made a part hereof, and basement space shown in plat No. 2, at-

tached hereto and made a part hereof." Plat No. 1 is a blueprint drawing of the entire ground floor of the building and shows the premises in question (ruled around in red ink), fronting on State street, as being occupied by "Albert Hoefeld." Plat No. 2 shows the basement premises and the distance of the premises from the Jackson boulevard building line to be approximately 35 feet. The lease was introduced in evidence. Plaintiff testified that on May 1, 1921, he endeavored to take possession of the premises described, that he found the same occupied so that he could not move in, and that defendant corporation was then in possession of the same. There was also introduced in evidence a written demand for immediate possession of the premises (described identically the same as in the complaint above set forth) addressed to defendant, dated May 3, 1921, signed by plaintiff, and showing service of said demand on defendant on the same day.

Frank J. Murray, a resident of Orange, New Jersey, and secretary and treasurer of the Hilton Company, was called as plaintiff's witness. A certified copy of a certificate of the Secretary of State of Illinois, dated January 16, 1920, showing that the Hilton Company was incorporated under the laws of the State of New Jersey, and that it had in all respects complied with the requirements of the laws of Illinois regarding foreign corporations, was then admitted in evidence over a general objection. It appears that said certificate was filed for record in the recorder's office of Cook county on January 29, 1920, thirteen days after the date of the certificate. The witness, Murray, testified that the Hilton Company manufactured and retailed men's clothing; that its home office was in Newark, New Jersey; that it had several branch stores, one at 222 South State street, Chicago, where it sold men's clothing at retail; that in the year 1920, in behalf of said company, he had negotia-

tions with Willoughby & Company, agents of the Otis heirs, with reference to his company procuring a 99-year lease on the "old Hub property," and that, as a result of the negotiations, such a lease was executed by the Otis heirs, as lessors, to the Hilton Company, as lessee. This lease was received in evidence over the objection of defendant's attorney that "no proper foundation had been laid for its introduction, that it had not been properly identified and that it was irrelevant and immaterial to the issues in the case." The lease is dated September 29, 1920. By it the Otis heirs leased to the Hilton Company from May 1, 1921, until April 30, 2020, at a stipulated rental, the following described real estate in Chicago, Illinois, viz.: "The north half of the east half of lot 14 in block 140 in School Section Addition to Chicago; also, all of lots 15 and 16 in said block 140 in School Section Addition to Chicago, except the north 42 feet thereof." The lease contained a provision to the effect that the lessee (Hilton Company) was given the right and option to cancel and terminate the lease on April 30, 1936, upon condition that it would on or before November 1, 1935, serve on the lessors written notice of its election to exercise the option. The witness, Murray, further testified that said lease was delivered to the Hilton Company on November 12, 1920; that it took possession of the premises on May 1, 1921, except "the part that Albert Hoefeld, the defendant, occupies, and the part which Foreman & Clark, another tenant, occupies"; that the Hilton Company is now in the possession, either by itself or by its tenants, of all of said premises, with said exceptions; that regarding the optional agreement mentioned in said 99-year lease, the Hilton Company waived the same by written agreement (introduced in evidence) entered into between the parties to the lease on April 26, 1921; that the Hilton Company has paid rent on the lease and the same is in full force and effect; that

the building and property known as the Old Hub building is the same as is covered by the legal description mentioned in the lease; and that the premises mentioned in plaintiff's lease from the Hilton Company includes a portion of said Hub building.

Plaintiff's witness, Edward M. Willoughby, of Willoughby & Company, agents of the Otis heirs, identified a lease, dated June 20, 1916, from the Otis heirs to the defendant corporation, and testified that it went into the possession of the premises in question on August 1, 1916, and paid rent on the lease up to May 1, 1921. The lease was introduced in evidence over the objection of defendant's attorney that "it is not properly identified and not material to the issues in the case." It demised and leased "the stores and basement known as *Nos. 238 and 240 South State street,* said stores being on the main floor of the building known as the Old Hub building, situated on the northwest corner of Jackson boulevard and State street," from August 1, 1916, until April 30, 1926, at a stipulated rental. The lease contained the provision that, if default be made in the payment of the rent, or in any of the covenants in the lease to be kept by the lessee, and such default shall continue for five days after written notice thereof, the lessor may then declare the term ended. It also contained the provision:

"That if the lessors shall *desire* to make a 99-year lease on said property, or shall *desire* to sell or rebuild the building now upon said premises, the parties of the first part (lessors) shall have, and they are hereby given, the right and option to terminate said term and cancel this lease on the 30th day of April, 1921, *provided* that they shall on or before the 1st day of November, 1920, serve a written notice on the lessee, stating in said notice that they have exercised their said option to cancel and terminate said lease, and provided further that they shall pay to the lessee at the time of the service of said notice the sum of $7,500."

Plaintiff's witness, Allen G. Mills, testified that on October 18, 1920, he served a written notice, dated October 13, 1920, signed by the Otis heirs, and addressed to the defendant corporation, by personally delivering the same to Albert Hoefeld, president of defendant, in Chicago, and at the same time delivering to him a certified check drawn on a Chicago bank, payable to defendant's order, for $7,500; and that said Hoefeld kept said check, and told the witness that it would not be necessary for him to deliver the $7,500 in legal tender currency but that the certified check was sufficient. Defendant, however, did not subsequently cash said check. The notice refers to the lease to defendant and particularly to the clause giving to the lessors said option to terminate the same on April 30, 1921, upon giving six months' previous notice, and then states that said lessors:

"Do hereby notify you, *first,* that they desire to make a 99-year lease on said property * * * and have made definite arrangements to lease said property, together with the building on which the same is located * * * for a period of 99 years; *second,* that they have exercised, and do hereby exercise, their right and option to cancel and terminate said lease, * * * and the term thereby demised, on April 30, 1921, * * *; *third,* that they pay you herewith, at the time of serving you this notice, the sum of $7,500, * * *; *fourth,* that by virtue of the exercise of the right and option on the part of the undersigned * * * the term demised by said lease is terminated on said April 30, 1921, and on said date all your rights and interests under and by virtue of said lease will cease and be at an end."

It further appears that on October 18, 1920, the defendant corporation, by said Hoefeld, its president, wrote to the Otis heirs, acknowledging the receipt of said notice and of said check, and saying:

"In case you consummate your lease for 99 years, we shall remove from the property on or before the date given for such termination. Pending the con-

summation of the 99-year lease, however, we shall hold the check, and in case the lease is not consummated, we understand that our tenancy is to continue for the term of the written lease, in which event we shall return the check to you.''

On the trial, defendant introduced in evidence its letter, written by its president, to the Otis heirs, dated December 3, 1920, as follows:

''Since writing you under date of October 18, 1920, we have been advised on legal authority that the notice you served on us on October 13, 1920, did not vitiate our lease on the premises at 238 and 240 South State street, and that we shall protect all rights conferred on us through that lease.''

And Mr. Walker, attorney for defendant, testified that during the month of April, 1921, he went to the office of Willoughby & Company, agents for the Otis heirs, in Chicago, and tendered to them, on behalf of defendant, the rent for the premises for the months of May, June and July, 1921, under its lease, and that the tender was refused.

It is first urged by counsel for defendant, in support of their contention that the trial court erred in instructing the jury to find for the plaintiff, that the evidence does not show that, either at the time (May 3, 1921) plaintiff's demand for possession was served on defendant, or at the time (May 4, 1921) the present action was commenced, defendant was in possession of the premises in question. There is no merit in this. The proof of possession by defendant at said time was complete and sufficient. Plaintiff testified that on *May 1*, the defendant company was in possession of the premises. Murray, secretary of the Hilton Company, testified that at the time of the trial, *July 8*, his company was in possession of the entire Old Hub building, except that part thereof occupied by the defendant company and that part occupied by Foreman & Clark, another tenant. Moreover, when the motion for advancing the hearing of the cause

was being argued before the same judge who afterwards tried the cause, on May 28 (twenty-four days after the action was commenced), the attorney for defendant said: "We have been in possession there for five years." Even without this admission the proof of defendant's possession on said days was sufficient. (*Merrin v. Lewis*, 90 Ill. 505, 507; *Ragor v. McKay*, 44 Ill. App. 79, 80.) And there was no contention made in the trial court that defendant was not in possession of the premises in question at the time of the commencement of the suit or at the time of the trial.

It is also urged that said 99-year lease was improperly admitted in evidence because the premises, therein described by their legal description, were not shown to include the premises described in the lease to plaintiff and in plaintiff's complaint, and that the lease to defendant corporation was improperly admitted in evidence because it describes the premises leased as "the stores and basement known as Nos. 238 and 240 South State street, said stores being on the main floor of the building known as the Old Hub building," etc., whilst in the lease to plaintiff, and in his complaint, the description is "the ground floor store, *No. 244 South State street*," etc. In other words, defendant here relies upon a variance, which, as appears from the general objections made by defendant's counsel in the trial court when the documents were introduced, was not there relied upon, or called to the attention of plaintiff's counsel or the court. It is now too late to raise the point in this Appellate Court. (*McGrath v. Miller*, 61 Ill. App. 497, 500; *Chicago & A. R. Co. v. Morgan*, 69 Ill. 492, 494; *St. Clair County Benev. Society v. Fietsam*, 97 Ill. 474, 480.) Furthermore, in plaintiff's lease and in his complaint the description of the premises is not only the store and basement, "No. 244 South State street;" but the premises are otherwise fully identi-

fied as being the same as those occupied by defendant, as shown by the further descriptions mentioned, and the plat No. 1, in the lease, wherein the premises occupied by defendant are ruled around in red ink, and shown as being the third store from the corner. Moreover, on May 28, 1921, on the hearing of plaintiff's motion to set the cause for trial at an early day, it appears from the affidavit of said Hoefeld then filed that he admitted that the premises described in defendant's lease are the same as those referred to in plaintiff's lease and complaint. Hoefeld therein stated that "the right of Albert Hoefeld, a corporation, defendant, to the possession of a portion of the premises at the northwest corner of South State street and Jackson boulevard, known as the Old Hub building, *as described in the complaint filed herein,* is under and by virtue of a certain lease between Charles T. Otis and others, and Albert Hoefeld, a corporation."

It is also urged that said 99-year lease is really not a 99-year lease, for the reason that it contained an option, giving the Hilton Company the right upon notice to cancel it and terminate the term in fifteen years, viz., on April 30, 1936. This same point was raised, on the same 99-year lease, by said other tenant in said building, Foreman & Clark, in a similar litigation in the United States Court for the Seventh Circuit, and decided adversely to them. (See *Foreman v. Hilton Co., Inc.,* 280 Fed. 608.) The leases to Foreman & Clark in this litigation contained the identical provision for their cancellation as is contained in the lease to the defendant corporation, in case the lessors (Otis heirs) should "desire to make a 99-year lease." In view of said decision and the statements and reasonings in said opinion, we do not think there is any merit in counsel's contention.

And in our opinion the trial court did not commit any error in overruling defendant's motion for a new

trial immediately when made, and without hearing arguments from its counsel, in the absence of any showing that such action was prejudicial to defendant. (*Johnson v. Mellhousin,* 105 Ill. App. 367, 369; *Horvitz v. Shanfeld,* 198 Ill. App. 254, 256.)

It is also urged that defendant corporation, under the provisions of its lease, should have been given a five days' notice to quit, before demand for possession was made and the complaint filed. In defendant's lease there were provisions for giving two notices—one a five days' notice to end the term in case of default in paying rent, etc. (and there was no such default), and the other a six months' notice to terminate the lease and end the term, in case the lessors should desire to make a 99-year lease. It appears that the lessors did desire to make a 99-year lease and gave the six months' notice required, and thereby defendant's lease was terminated on April 30, 1921. The service of a five days' notice, under the facts disclosed, was unnecessary, and would have been superfluous.

It is here urged for the first time that, because the certificate of the Secretary of State of Illinois, showing the license of the Hilton Company to do business in Illinois, was not filed in the recorder's office of Cook county within ten days, but thirteen days, after its issuance, said company was not shown to have been properly licensed to do business in this State. No objection was made to the introduction in evidence of the certificate on that ground. Furthermore, we are not aware of any decision to the effect that the failure to file a certificate of license to a foreign corporation in the recorder's office within ten days after its issuance renders that license invalid. The certificate is evidence of the facts therein stated (Hurd's Rev. St. 1919, chap. 32, sec. 28a117, Cahill's Ill. St. ch. 32, ¶ 145), and the failure or neglect of the corporation to file the certificate within the required

time subjects it to the payment of a fine. (Id., sec. 28a124, Cahill's Ill. St. ch. 32, ¶ 152.)

Our conclusion is that the court did not err in instructing the jury to find for the plaintiff. There were no disputed facts for the jury to pass upon. Accordingly the judgment of the circuit court is affirmed.

*Affirmed.*

BARNES, P. J., and MORRILL, J., concur.