### Rose L. Adelman and Benjamin Colitz, Executors and Trustees, et al., Appellees, v. Carson, Pirie, Scott & Company and John V. Farwell Company, Appellants.

## Gen. No. 32,483.

1. INJUNCTION—*averments on information and belief as basis for injunction.* Averments in a bill for an injunction which are made on information and belief and not supported by the affidavits, and which are explicitly denied in the answers and the affidavits of the defendants, cannot properly furnish a basis for an injunction.

2. LANDLORD AND TENANT—*preliminary agreement as aid to construction of lease.* Where a tentative or preliminary agreement for a lease contemplates a formal lease and other documents that when executed will supplant it, the court will look not to the displaced agreement to determine the intention of the parties and the construction of the lease, but to the final instrument itself.

3. LANDLORD AND TENANT—*provisions for termination of lease as not preventing creation of valid term of years.* Where a term for a fixed period is created by a lease, a provision for its termination upon an event which may or may not happen before the expiration of the period specified, or a provision for its termination before the expiration of such period at the option of the lessor or lessee, will not prevent it from creating a valid term of years.

4. LANDLORD AND TENANT—*construction of term of lease.* A term of 99 years as designated in the *habendum* clause of a lease is not made a term for 20 years by a further provision giving either party an option

to terminate the lease at the end of 20 years; and it is immaterial that the lease provides that if the premises are destroyed by casualty within the first 18 years the lessee shall repair or erect a new building, that if the premises are partially destroyed after the first 18 years the lessee may elect to end the lease, that an option to purchase the premises within 18 years is not continued after such time, and that the lease does not contain provisions ordinarily contained in the longer term leases.

5. .LANDLORD AND TENANT—*words to create a lease.* No particular words are necessary to create a lease.

6. LANDLORD AND TENANT—*no standard form for 99-year lease.* There is no universal standard form for a 99-year lease.

7. CORPORATIONS—*collateral attack on lease made by corporation not authorized to own land.* A lease of land cannot be collaterally attacked on the ground that the corporate lessor has no power to own real estate.

8. CORPORATIONS—*lease extending beyond corporate life as ultra vires.* A lease between corporate parties is not ultra vires because it creates a term that will outlast the life of the parties.

9. CORPORATIONS—*who may question absence of stockholders' consent to execution of lease.* The want of consent of stockholders to the execution of a lease can, generally speaking, only be urged by the stock-holders themselves.

10. CORPORATIONS—*ratification by stockholders of lease.* A lease of all the property of a corporation may be ratified by the stockholders.

11. CORPORATIONS—*silence as ratification by stockholders of lease.* A lease of all the property of a corporation may be ratified by the silence of the stockholders.

12. CORPORATIONS—*ratification by stockholders of voidable lease.* A lease that is voidable and not void, because executed without the consent of the stockholders, is capable of ratification by the act or silence of the stockholders.

Interlocutory appeal by defendants from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the second division of this court for the first district. Reversed. Opinion filed February 14, 1928.

TENNEY, HARDING, SHERMAN & ROGERS, for appellants; HORACE KENT TENNEY, CHARLES F. HARDING, JR., and HENRY F. TENNEY, of counsel.

JACOBSON, MERRICK & LATTER, for appellees; ABRAHAM MEYER and DAVID L. ROSENTHAL, of counsel.

Mr. Presiding Justice Barnes delivered the opinion of the court.

This is an appeal from an interlocutory injunction, which, speaking generally, restrains defendants from interfering with complainants' possession of and asserted rights in a part of the premises in question, known as the Farwell Block, owned by defendant John V. Farwell Company (referred to hereinafter as the Farwell Company), under a lease from the Farwell Company to complainants. Said lease is for a term of 10 years, expiring December 31, 1932, subject to termination before that time under paragraph 9 thereof, which reads as follows:

"*Ninth.* It is further covenanted and agreed that the party of the first part (John V. Farwell Company) shall have the privilege of terminating this lease for said demised premises on December 31, 1927, or on December 31st of any year thereafter during the term by giving to the party of the second part (Sam Adelman & Co. and Sam Adelman) two years' prior notice in writing of its intention so to do, without any compensation to the party of the second part. The privilege of party of the first part to terminate this lease shall only be exercised in the event of a sale or ninety-nine year lease of said property."

The Farwell Company having executed a purported 99-year lease on October 10, 1925, to Carson, Pirie, Scott & Company (referred to hereinafter as the Carson Company), served a two-year notice on complainants of its intention to terminate their lease on December 31, 1927, and the bill, answers and affidavits read on the hearing of the motion for a preliminary injunction, present as the controlling question whether such lease is a 99-year lease in fact. If it is, the injunction was improvidently granted; otherwise not.

The *habendum* clause of said lease designates the term as "from and including the date hereof to and including the 31st day of December, 2024." The bill,

however, charges in substance that other provisions therein evidence that it is not a 99-year lease but one for 20 years only, that it was intended as such, that as a 99-year lease it was ultra vires, and that to deprive complainants of enjoyment of their lease defendants conceived of an inequitable plan and "entered into a secret arrangement and understanding, the exact terms of which are unknown to complainants."

This latter charge, manifestly made on information and belief, is in no way supported by the affidavits, and as it is explicitly denied in both the answers and affidavits in behalf of defendants, it could not properly furnish a basis for the court's action.

Eliminating from consideration, then, the element of fraud or want of good faith, the equities of the bill rest entirely upon the actual character of the lease. As evidencing its actual character complainants specially refer to two provisions therein, one for its cancellation, and one for procedure in the event of fire or other casualty. The provision for cancellation reads:

"Either party hereto may cancel this lease to take effect on December 31, 1945, or on December 31st of any year thereafter, either by serving notice of cancellation on the other party hereto, or by filing for record with the Recorder of Deeds of Cook County, Illinois, such notice, duly executed and acknowledged by the party canceling, provided such notice is served or filed for record on or before one (1) year before the date of such cancellation is to become effective."

It is argued that because either party may under this provision terminate the lease at the end of 20 years or at the end of any year thereafter, it is one for only 20 years, and that other provisions, as well as absence of provisions, and a prior agreement between the parties support that conclusion.

In said prior agreement, dated September 22, 1925, the Farwell Company offered, among other things, to

rent the Farwell building for a period of 20 years from January 1, 1926, at a specified rental. The offer, if accepted, was "to be put in the usual form of a long term lease," and gave an option to the Carson Company to buy said building and the land on which it is situated "at any time on or before nine years," at a specified price, "and thereafter on or before the expiration of another nine years" at an increased price. Its final paragraph read:

"This offer, when signed by you (Carson Company), is a tentative agreement between the parties, upon which the final papers shall be based, and it is agreed that * * * property leases and all other documents necessary to the full completion of the matter, shall be in readiness for delivery on or before October 10, 1925."

It is manifest that this so-called "tentative" or preliminary agreement contemplated a formal lease and other documents that when executed would necessarily supplant it. It is obvious, too, that the parties could mutually agree to different terms on executing the final papers. We must, therefore, the element of fraud being eliminated, look not to the displaced agreement to determine the intention of the parties and the construction of the lease, but to this final instrument itself. The lease constitutes a complete agreement in itself—so far as disclosed by the record— and presents no ambiguity justifying resort for construction to extrinsic documents, facts or circumstances. Looking to it alone, then, to ascertain the intention of the parties, are any of its provisions absolutely inconsistent with or repugnant to the definite expression in the *habendum* clause for a demise for 99 years?

It will not be questioned that where a term for a fixed period is created by a lease a provision for its termination upon an event which may or may not happen before the expiration of the period specified,

or a provision for its termination before the expiration of such period at the option of the lessor or lessee, will not prevent it from creating a valid term of years. (35 C. J. 972; 18 Am. & Eng. Encyc. 209; *Goodright v. Richardson,* 3 Burnford & East Term Rep. 462; *Kenny v. Knight,* 119 Fed. 475.) But it is urged that where, as here, the lease gives either party the right to terminate it at a certain period less than the full term of the demise it must be deemed a demise for only such period and is not binding upon either party beyond that time; that such a lease must be differentiated from one giving an option to terminate to one party only and remaining absolutely binding on the other if the option is not exercised. Cases of the latter character are *Foreman v. Hilton Co.,* 280 Fed. 608, and *Bartkowski v. Hoefeld,* 226 Ill. App. 198. No case, however, has been cited on either side where the option was mutual. But discussing a like contention made in *Kenny v. Knight, supra,* the court said that even if it was of the opinion that the contract before it was terminable at the will of either party, or upon reasonable notice, ''it would not follow that the agreements therein contained would not be obligatory upon the parties so long as they continued to act under such contract before revoking or terminating it.'' It is seemingly irrelevant, therefore, in determining the character of the lease, that either party may terminate it, if, neither electing so to do, they may continue to act under its other provisions for its full term. Whether the option is availed of concerns only the parties to the agreement if competent to make it. Whether it will be exercised is as uncertain as the happening of any other future contingency or condition subsequent. The test is not, in our opinion, whether the lease is absolutely binding on one party at the will of the other for the full term of 99 years, but whether in case neither party elects to terminate it they may not under its provisions and imposed obli-

gations continue the relation of landlord and tenant for a term of 99 years. If so, the instrument is what it purports to be, a 99-year lease, and the event on which complainants' lease may be terminated has arisen.

The other provision referred to is to the effect that if the premises are destroyed by fire or other casualty during the first 18 years of the lease the lessee shall repair the same or erect another building, and if after the first 18 years it be destroyed to a certain extent the lessor may elect to declare the term ended by serving notice as therein specified. But there is nothing in this provision inconsistent with or repugnant to a term for a longer period than 20 years. It stands on the basis of any other condition subsequent.

Counsel point to other provisions giving the lessee options to purchase at respectively 9 and 18 years after the commencement of the term, and reserving the right of the lessor to sell and the lessee to buy the property within such 18 years without any provision therefor after that time. Such provisions are not antagonistic to the lease until put in force. (*Powell v. Dayton, S. & G. R. R. Co.*, 16 Ore. 33.) The argument is to the effect that these provisions being appropriate for a 20-year lease indicate that the instrument was drawn pursuant to the tentative agreement for that term and hence support the inference that the term of demise in the *habendum* clause was inserted merely to give a colorable right to terminate complainants' lease. In short, the argument goes to the contention of bad faith. But it is manifest that no such inference is palpable from the context of the lease itself. Nor is it justified from the fact that defendants varied the terms of the preliminary agreement in drawing the final one, or from the fact that the lessee desired possession of the entire premises before the end of complainants' term. These facts severally or together support no such inference and have no such probative force. They are not inconsist-

ent with entire good faith, and fraud or bad faith will not be presumed to support complainants' theory.

Counsel also point to the absence of other provisions alleged to be ordinarily contained in longer term leases, such as for reappraisement, for the enhancement or diminution of rent, for the erection of a new building when the present building becomes obsolete, or for its maintenance or restoration, or for adjustment of its ownership at the end of the lease.  But it cannot reasonably be asserted that it is not a 99-year lease because of the absence of such provisions or any of them.  Whether or not the lease omits desirable provisions the parties to it were free to contract as they saw fit not in violation of law or against public policy.  If it be in fact a 99-year lease it is not subject to attack by complainants.  No particular words are necessary to create a lease (*Miller v. Gordon,* 296 Ill. 346), and there is no universal standard form for a 99-year lease.  As it contains all the essentials of a lease and the parties may pursuant to its terms continue to act under its provisions for the full term demised, it cannot be said not to be such a lease because of provisions whereby it may be terminated before the end of the period or because of the absence of provisions that are ordinarily incorporated in such a lease.  Passing upon the reservation of a right of revocation in a deed of trust wherein the grantee took the estate with the possibility of being divested by the happening of the uncertain event of its exercise, the court, *In re Dolan's Estate,* 279 Pa. 582, said:

"The right to revoke, unexercised, is a dead thing. Its presence in a deed does not alter the character of the instrument or estate granted; to all intents and purposes, title and possession pass just as effectively as any deed or grant could make it, continuing in that state so long as the power of revocation lies dormant."

Substituting "cancel" for "revoke," we think this statement of the law applicable to the case at bar.

But it is alleged that the Farwell Company has ceased to do the business for which it was incorporated in 1890 for 99 years, and is, therefore, unable to own any real estate; and that if the lease is one for 99 years, it is illegal because it extends beyond the corporate life of either of the parties thereto. If there be any merit in the former allegation of alleged usurpation of power in respect of ownership and enjoyment of landed property the Farwell Company might be required to answer to the State, and to the State only, but the lease cannot be collaterally attacked on that ground by complainants. (*Rector v. Hartford Deposit Co.*, 190 Ill. 380, 389; *Illinois Life Ins. Co. v. Beifeld*, 154 Ill. App. 582; *Dearborn Truck Co. v. Staver Motor Car Co.*, 219 Ill. App. 295.)

With respect to the contention of ultra vires or the invalidity of the lease because it creates a term that would outlast the life of the corporate parties to it, the decisions are to the contrary. (*Brown v. Schleier*, 118 Fed. 981; *State v. Laclede Gaslight Co.*, 102 Mo. 472.)

It is contended that the lease in question was not duly authorized by the board of directors or stockholders of the Farwell Company. There is no allegation in the bill upon which this contention may rest. The charge of the invalidity of the lease rests on the doctrine of ultra vires already considered. The question of authority to execute the lease was brought into the record only by an affidavit complainants read at the hearing, stating what the minutes of the board of directors of the Farwell Company disclosed and failed to disclose. In the absence of any averment in the bill presenting such an issue, the only pertinency of such minutes was their bearing on the intention of said directors and the stockholders respecting the transaction. But, as above stated, there is no necessity for resort to extrinsic facts or circumstances for the intent of the company is clearly ascertainable from the lease itself. It does appear, however, that after the

lease was executed and delivered both the directors and stockholders by resolution approved, ratified and confirmed all acts and doing of the officers of the company "as appearing in the minute book of the company and in the corporate records." While it is alleged that there was no express reference in the minutes to the execution of said lease, and, strictly speaking, it may be that an instrument of that kind is not a part of the "corporate records," as that term is generally understood, yet the affidavit of the secretary of said company states that the lease was executed and delivered prior to the meetings of said board and said stockholders and was at the time of such meetings a part of the corporate records of the said company. For aught that appears to the contrary, it may have been so regarded and referred to as such in the resolutions.

However, it does not appear that either by statute, charter or by-law the consent of the stockholders was required; and, if it was, their want of consent could, generally speaking, only be urged by the stockholders themselves (Fletcher Cyclopedia Corporations, vol. 3, sec. 1454); and while as to a lease of all the property of a corporation there is some conflict of opinion upon the necessity of such consent, the lease may be afterwards ratified by them. (Id., vol. 2, sec. 1242.) And it may be ratified by silence. (Id., vol. 3, sec. 1454.) The lease here had been in force and acted upon by the parties thereto for about a year before the bill was filed, presumably with the knowledge of not only the lessor's officers but its stockholders, especially in view of their ratification not only of a lease of the building but of the sale of the merchandise therein, resulting practically in closing the business the lessor had been theretofore carrying on therein.

However, while we do not think the bill presents the issue of the invalidity of the lease because not expressly authorized or ratified, yet if the resolutions

referred to cannot be so construed, the instrument not being void but at best voidable only in case such consent was required, it is capable of ratification by the act or silence of the beneficiary or beneficiaries, namely, the stockholders. (Id., vol. 3, sec. 1454, p. 2449; *Westerlund v. Black Bear Min. Co.*, 203 Fed. 599, 611.) So long, therefore, as the validity of the lease may be questioned only by the State for ultra vires, and on other grounds by the parties to it or their beneficiaries, and it has not been questioned by the former and has apparently been ratified by the latter, it is not open to collateral attack by complainants.

The injunctional order, therefore, will be reversed.

*Reversed.*

GRIDLEY and SCANLAN, JJ., concur.