542

AGGIE NAUYOKS, No. 3504, EARL POLLOCK, ET AL., No. 3291, GEORGE R. JANNER, No. 3486, MARK WEDEL, ET AL., No. 3297, LOUISE C. LAWRENCE, ET AL., No. 3324, ROSE SOKOLOWSKI, No. 3333, RITE PRICE GASOLINE CO., No. 3509, SPUR DISTRIBUTING CO., INC., No. 3485, MARTIN ANDRUSHAT, ET AL., No. 3288, MARY LANGVIN, No. 3295, NINA BRATTON WATKINS, ET AL., No. 3292, E. W. MATHIS, ET AL., No. 3325, ANNA ZELVIS, No. 3296, ROSE HALLORAN, No. 3374, LOUIS GOLDBERG, No. 3507, JOSEPH C. EFFINGER, ET AL., No. 3505, NELLIE RODGERS, No. 3481, CLAUDE H. OZIER, ET AL., No. 3508, THEISS BROS. FEED COMPANY, No. 3378, Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed May 14, 1941.*

*Supplemental opinion, No. 3324, filed June 10, 1941.*

*Petitions for rehearing, Nos. 3229, 3325, 3505, 3509, denied June 10, 1941.*

*Petition for rehearing, No. 3378, denied June 13, 1941.*

*Petition for rehearing, No. 3485, allowed June 13, 1941.*

H. GRADY VIEN, RALPH L. COOK, WILMER L. VOGT, F. E. MERRILLS, FRANK E. LICKHALTER, POPE & DRIEMEYER, BEASLEY & ZULLEY, KRAMER, CAMPBELL, COSTELLO & WIECHERT, THOS. L. FEKETE, P. K. JOHNSON, for claimants.

OTTO KERNER and GEORGE F. BARRETT, Attorneys General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

The above designated claimants have heretofore filed their individual claims in this court, seeking awards for damages alleged to have been suffered by them on the properties described in the respective complaints, by reason of the construction of two underpasses on that part of St. Clair Avenue in East St. Louis, Illinois, which forms a part of U. S. Highway No. 66. The alleged damages claimed in the foregoing cases total $382,565.26.

As the several causes of action all arise out of the same construction work, and as the same legal questions are primarily involved, counsel for the several claimants and for respondent have agreed to a consolidation of the cases for general consideration by the court.

It is not contended by either claimant that any of their property was taken by the improvement in question, but they are asking consequential damages on account of the change in grade, the interference with direct access to their proper-

ties from St. Clair Avenue and the closing off of direct traffic past their respective properties. Action on these claims has been delayed because of legislative changes in the law applicable to the hearing of property damage claims and by the subsequent decision of our Supreme Court that such change in legislation was unconstitutional.

The facts herein, so far as applicable to all of said properties, are as follows:

The St. Clair highway improvement consists of two subways, one under the tracks of the Louisville and Nashville Railroad and of the Baltimore and Ohio Railroad and the other under the Pennsylvania Railroad tracks. The pavement under the subways is 44 feet in width, has retaining walls surmounted by concrete hand-rails 3 feet 11 inches high and ornamental lights, and service-drives 20 feet in width outside and adjacent to the head walls. An opening 80 feet in width extending between the ends of the hand-rails on both the north and south sides of the highway between the subways, has been left for access to the service drives. Pedestrian-subways and approach-steps have been provided at the north and south sides of each subway. The service-drives are all essentially the same grade as the previous surface of St. Clair Avenue. The latter is 104 feet 7 inches in width within the limits of construction, and the Division of Highways of Illinois confined all its construction, with the exception of that done on the railroad right-of-way to the existing street. St. Clair Avenue in East St. Louis runs in a northwesterly and southeasterly direction, but is generally considered and referred to as running in an easterly and westerly direction. Accordingly, throughout the record the properties in question are referred to as being on the south side or on the north side of St. Clair Avenue, as the case may be. A plat filed as Claimants' Exhibit No. 1 shows that claims have not been filed for all the properties facing St. Clair Avenue affected by the subways; of the nineteen claims considered herein, fifteen are for damages to the freehold and four are for damages claimed by those holding a leasehold interest.

All of this property is located in what is generally known as the Stock Yards District of East St. Louis. A large volume of traffic goes into and out of the yards each day. A Highway Department survey in 1933 showed an estimated traffic of 13,200 vehicles per day along St. Clair Avenue,

where these properties are located. Another survey in August, 1940, showed a total of 14,627 vehicles in a 24-hour day. At the nearby Stock Yards there is a Live Stock Exchange Building, in which there are about one hundred offices in all; also a United States Post Office, National Stock Yards National Bank, which is the largest bank in Illinois outside of Chicago. Approximately 7,500 to 10,000 people are employed at the Stock Yards each day. Approximately 300,000 trucks per year enter the Stock Yards, which are open twenty-four hours a day, and truckers arrive at all times. The National Hotel located at the Stock Yards contains one hundred twenty-five rooms and a patronage last year of 23,000 persons. According to the record, 81 per cent of the shipping to the yards is done by truck.

In considering the several claims, for the sake of uniformity, the date of May 15, 1937, is used as the time of commencement of the construction of the subways, and December 15, 1938, is used as the time of the completion thereof. Before the improvement the central part of St. Clair Avenue was a cobblestone block pavement with street car tracks traversing same, crossing several sets of railroad tracks protected by signal gates. The section as now improved is a concrete roadway without car tracks, and the vehicular traffic passes beneath the railroad tracks through the two subways. Access to all of the properties involved in the complaints may be had, but in some instances only by driving down the narrow lane between the subway balustrade and the curb. In many instances this would necessitate backing out, because of the lack of space in which to turn. The properties will be considered in the order in which they appear upon the blue print identified as Claimants' "Exhibit 1."

### Tract No. 1—Aggie Nauyoks.
### (C. of C. No. 3504.)

This property is farthest to the east of the several claims herein, is on the south side of St. Clair Avenue, and is owned by Aggie Nauyoks. There is a mortgage on the property of $600.00 in favor of Pete Antonovich, Trustee. The retaining wall on the south side of the street starts 65 feet east of the northwest corner of this lot. The wall is 3 feet 11 inches in height and the balustrade is 12 inches wide. The driveway runs between the balustrade and the curb, 20 feet wide, and on the same level as the original street. None of the balus-

trade extends in front of this property. It starts 5.32 feet west of the west side of the property. The 20-foot wide roadway extends in a westerly direction from the beginning of the balustrade. A service-drive on the south side of St. Clair Avenue extends to Third Street, which is unimproved and not greatly traveled. Claimant has lived in the property since 1926. The improvements consist of a two-story frame building containing a store-room and two rooms downstairs, three rooms upstairs and a bath and lavatory. In May, 1937, a portion of the downstairs was rented for a tavern at $25.00 per month. On December 15, 1938, it was rented for the same rental, and at the present time claimant receives $35.00 per month for the entire downstairs, but now pays for gas, electricity and water, leaving the net rental approximately $22.00 per month. The rental of two additional rooms now contributes to the gross rental received. Besides the damage to ingress and egress, claimant contends that cracks in the plaster, settling of the house, sagging of the doors, etc., were occasioned through the construction of the subway. Claimant bought the property in 1926 for $4,200.00 and had made substantial repairs thereafter. She seeks an award of $8,000.00 for damages occasioned by the subway construction. The rule under which the damages, if any, are to be determined is the difference in the value of the property prior to the construction of the subways and the value of such premises immediately after such construction and as affected thereby. Three principal witnesses were called by claimant and three by respondent. Their testimony as to the amount of damages varied from $3,436.00 to $780.00, being respectively as follows:

|  | Prior to Construction Value | After Construction Value | Damages |
|---|---|---|---|
| For Claimant: |  |  |  |
| Wesley C. Moss | $4,678.00 | $1,242.00 | $3,436.00 |
| Philip Cohn | 5,057.50 | 2,250.00 | 2,807.50 |
| C. E. Rogers | 5,000.00 | 2,500.00 | 2,500.00 |
| For Respondent: |  |  |  |
| Forrest Beckwith | $4,008.65 | $3,006.49 | $1,002.16 |
| Frank E. Abell | 3,150.00 | 1,750.00 | 1,400.00 |
| M. L. Harris | 3,650.00 | 2,870.00 | 780.00 |

These same witnesses testified as to the damages in fifteen of the claims. Some of them, together with other witnesses, testified as to the other four claims, and their testimony will be again referred to.

## TRACT No. 2—EARL POLLOCK.
### (C. of C. No. 3291.)

This property is owned by claimants, Earl C. Pollock and Victoria Pollock, his wife, as joint tenants and not as tenants in common, and is subject to a real estate mortgage of $2,000.00 in favor of Stephen D. Sexton, Trustee, on Lots 16 and 17 described in the complaint. Two other lots are included in the claim. The first three lots have a frontage of 25 feet each on St. Clair Avenue and Lot 17 has a frontage of approximately 43 feet 5 inches. The balustrade extends along the entire front of this property. The depth of the subway at the northeast corner of the property is approximately .8 feet below the original elevation of St. Clair Avenue, and at the northwest corner is approximately 6½ feet below the original elevation of the street. The service-drive extends along the full length of the property. On May 15, 1937, claimants lived in one of the upstairs apartments in the two-story brick building thereon and operated a tire company on the first floor. He also had a gas filling station and a tire retreading plant in a corrugated iron building at the rear of the lot, and a corrugated iron shed partitioned into nine individual garages, and a small frame shed or building on the rear that he rented out for living quarters. As an indication of the extent of his business, the record shows he paid a sales tax on gross sales in 1936 of $42,388.31. He estimated that the business he did with truckers in and out of the Stock Yards amounted to about 50 per cent of his total business.

The proof shows that on December 15, 1938, the small frame building was producing $3.00 per week rent, instead of $4.00, as produced prior to the construction; the upstairs rooms in the two-story building now rent for $4.50 per week, instead of $6.00, as previously. Since the construction of the subways claimant has been unable to rent the store room and only occasionally one of the garages. Claimant discontinued his tire repair business at this location because of difficulty of ingress and egress, and moved to a location about three blocks away. Claimant in this case avers damages of $42,000.00. The testimony of the several witnesses as to the valuations prior and after construction and the resultant damage is as follows:

| For Claimant: | Prior to Construction Value | After Construction Value | Damages |
|---|---|---|---|
| Wesley C. Moss | $19,830.33 | $3,834.33 | $15,996.00 |
| Philip Cohn | 30,820.00 | 2,082.00 | 28,738.00 |
| C. E. Rogers | 18,000.00 | 5,000.00 | 13,000.00 |
| For Respondent: | | | |
| Forrest Beckwith | $11,278.00 | $5,414.00 | $5,864.00 |
| Frank E. Abell | 9,136.66 | 2,834.15 | 6,302.51 |
| M. L. Harris | 10,180.00 | 4,790.00 | 5,390.00 |

## TRACT No. 3—GEORGE R. JANNER.
### (C. of C. No. 3486.)

This is a rectangular lot, 120 feet in length, with a frontage of 25 feet on the south side of St. Clair Avenue, owned by George R. Janner. On May 15, 1937, the premises were improved by a one-story frame building covered on one side and the front with imitation brick shingles and presents a rather dilapidated appearance from one side. There is one large store room, with two living rooms in the rear. The property was rented at $40.00 per month. Since the construction the building has been empty most of the time, having produced but $55.00 rental from May 15, 1937, to the present time. The 20-foot service-drive and balustrade extend across the entire frontage. At a point opposite the northeast corner of the property the depth of the subway is 6½ feet below the level of the property and at a point opposite the northwest corner the depth is approximately 8.8 feet. Claimant seeks damage of $6,500.00. Testimony of the several witnesses as to values is as follows:

| For Claimant: | Prior to Construction Value | After Construction Value | Damages |
|---|---|---|---|
| Wesley C. Moss | $4,012.00 | $ 649.00 | $3,363.00 |
| Philip Cohn | 3,737.50 | 550.00 | 3,187.50 |
| C. E. Rogers | 3,750.00 | 1,000.00 | 2,750.00 |
| For Respondent: | | | |
| Forrest Beckwith | $2,284.25 | $1,142.13 | $1,142.12 |
| Frank E. Abell | 1,875.00 | 700.00 | 1,175.00 |
| M. L. Harris | 2,300.00 | 1,300.00 | 1,000.00 |

## TRACT No. 4—MARK WEDEL AND WILLIAM CASEY.
### (C. of C. No. 3297.)

The two above claimants derived their title through their grandmother, Hannah Byrd, who died July 10, 1923. A question arises from the record as to whether claimants are the

owners of the entire fee or whether there is an outstanding undivided one-ninth (1/9th) interest in an unknown heir. At the time construction work on the subways began the property was improved with an eight-room two-story frame residence. The lot is rectangular and has a frontage of 25 feet on St. Clair Avenue and a depth of 120 feet to the alley. The house consisted of basement, four rooms downstairs and four rooms upstairs with bath. On July 4, 1937, a fire partially destroyed the roof and the following February the owners wrecked the property, so that at present the lot is vacant. At a point opposite the northeast corner of the property the subway part of St. Clair Avenue is 8.8 feet below the original level of the street, and at the northwest corner it is approximately 10 feet below the old elevation. The balustrade and 20-foot service-drive extend along the entire frontage of the property. Claimants seek damages of $10,000.00. The property adjoins the Janner property and immediately beyond same is the Lawrence property, next under consideration. The testimony as to the value and damage to the property by the several witnesses is as follows:

|  | Prior to Construction Value | After Construction Value | Damages |
|---|---|---|---|
| For Claimant: | | | |
| Wesley C. Moss | $3,501.66 | $312.50 | $3,189.16 |
| Philip Cohn | 3,380.00 | 250.00 | 3,130.00 |
| C. E. Rogers | 3,000.00 | 250.00 | 2,750.00 |
| For Respondent: | | | |
| Forrest Beckwith | $1,250.00 | $625.00 | $625.00 |
| Frank E. Abell | 750.00 | 175.00 | 575.00 |
| M. L. Harris | 1,000.00 | 500.00 | 500.00 |

TRACT No. 5—LOUISE C. LAWRENCE.
(C. of C. No. 3324.)

This tract lies immediately beyond the Wedel and Casey property and next to the railroad. There is a dirt or cinder drive running along the side of the property. The tract covers two lots. No. 10 is owned by Louise C. Lawrence, is irregular in shape and has a frontage of 25 feet on St. Clair Avenue and a depth of 120 feet to an alley in the rear. Lot No. 11 is owned by A. C. Fritz, and it is stipulated that if an award is made on account of this claim, the voucher as to Lot No. 10 is to be made payable to Louise C. Lawrence and the voucher as to Lot No. 11 is to be made payable to both Louise C. Lawrence and A. C. Fritz. Lot No. 10 has a frontage of 25 feet

and a rear width of 48 feet with a depth of 120 feet. Third Street, lying between it and the railroad, is seldom traveled. The balustrade and 20-foot service-drive extend along the entire frontage of the property. At a point opposite the northeast corner the subway portion of the street is 10 feet below the original elevation and at a point opposite the northwest corner of the property the depression is 12.7 feet. Claimants seek an award of $10,000.00 for damage to the two properties. The testimony of the several witnesses as to values and damage is as follows:

|  | Prior to Construction Value | After Construction Value | Damages |
|---|---|---|---|
| For Claimant: |  |  |  |
| Wesley C. Moss | $3,650.00 | $365.00 | $3,285.00 |
| Philip Cohn | 3,650.00 | 365.00 | 3,285.00 |
| C. E. Rogers | 2,500.00 | 250.00 | 2,250.00 |
| For Respondent: |  |  |  |
| Forrest Beckwith | $3,187.50 | $1,593.75 | $1,593.75 |
| Frank E. Abell | 1,835.00 | 485.00 | 1,350.00 |
| M. L. Harris | 2,000.00 | 1,000.00 | 1,000.00 |

## Tract No. 6—Rose Sokolowski.
### (C. of C. No. 3333.)

Rose Sokolowski is the owner of the property involved in this claim. At the time of the construction of the subway a large two-story building of lumber and sheet metal was on the premises extending across the front of the lot, being approximately 75 feet in depth. For many years this property was known as the "Tin-top." There was a driveway running directly through the middle of the building and a store room on either side of the drive. There was a lunch room and living quarters downstairs and about twelve rooms upstairs. A car-washing stand was on the rear of the lot. The latter has a frontage of 50 feet on St. Clair Avenue and the two sides of the lot extend diagonally from the street to the alley, giving a depth of from 50 feet to 120 feet. It is located on the west side of the first subway and the 20-foot service-drive extends along the entire frontage of the property. At a point opposite the northeast corner of the property the subway of St. Clair Avenue is approximately 11 feet lower than the remaining surface of the street. At a point opposite the northwest corner it is approximately 7.7 feet lower. The service drive has an outlet on Freeman Avenue running along the side of this property. This street is seldom

used and is covered with dirt and cinders. The building was demolished prior to December 15, 1938. This tract and the Lawrence land on the opposite side of the railroad appear to be relatively similar in location and value. Claimant seeks damages of $8,000.00 by reason of the subway construction and the several witnesses testified as follows in regard thereto:

| | Prior to Construction Value | After Construction Value | Damages |
|---|---|---|---|
| For Claimant: | | | |
| Wesley C. Moss | $11,792.00 | $1,000.00 | $10.792.00 |
| Philip Cohn | 10,000.00 | 5,000.00 | 5,000.00 |
| C. E. Rogers | 7,500.00 | 1,000.00 | 6,500.00 |
| For Respondent: | | | |
| Forrest Beckwith | $2,500.00 | $1,250.00 | $2,000.00 |
| Frank E. Abell | 2,000.00 | 600.00 | 1,400.00 |
| M. L. Harris | 2,500.00 | 1,250.00 | 1,250.00 |

TRACT No. 9—MARTIN ANDRUSHAT.
(C. of C. No. 3288.)

It has been stiplated that the fee simple title to this property is in the names of Martin Andrushat and Susanna Andrushat, his wife, as joint tenants and not as tenants in common. It is an old two-story frame building covered with shingles and located at the commencement of one of the subway entrances. The owners reside on the second floor and operate a hardware store on the lower floor. In addition to the downstairs storeroom, there is a storage or warehouse room in the rear forming a one-story part of such building, and the upstairs consists of seven rooms with bath. There is also a frame garage in the rear, accommodating two cars. The testimony shows that a volume of business was done with truckers who stopped at the store before the subway was built, but that such business has stopped since the subway was completed. At a point opposite the northeast corner of the property the subway is depressed approximately one foot and at a point opposite the northwest corner the depression is approximately 1.8 feet below the level surface of St. Clair Avenue. Claimants seek damages of $20,000.00 and the testimony of the several witnesses as to the valuations prior and after construction and the resultant damage is as follows:

| For Claimant: | Prior to Construction Value | After Construction Value | Damages |
|---|---|---|---|
| Wesley C. Moss | $8,093.33 | $2,173.33 | $5,920.00 |
| Philip Cohn | 7,780.00 | 1,640.00 | 6,140.00 |
| C. E. Rogers | 7,500.00 | 2,000.00 | 5,500.00 |
| For Respondent: | | | |
| Forrest Beckwith | $4,441.00 | $2,674.56 | $1,766.50 |
| Frank E. Abell | 4,625.00 | 1,900.00 | 2,725.00 |
| M. L. Harris | 4,750.00 | 2,375.00 | 2,375.00 |

## Tract No. 10—Mary Langvin.
### (C. of C. No. 3295.)

This property is owned by Mary Langvin and is located immediately adjoining the Andrushat building. It is a two-story brick building and, from appearances, was in good condition when work on the subways began. While the title to this property is shown to be in the name of Mary Langvin, as Trustee, the testimony shows that she owns it individually. There is a mortgage of $1,200.00 against the premises owned by Florence Meredith, with interest paid to February 23, 1940. The building was vacant in May, 1937, but prior to that time the two floors had been renting for $100.00 per month. For three months prior to the hearing of evidence in this case the building had been rented for $20.00 per month. The testimony shows that there has been some water in the basement since the time the subway was completed, which did not exist previously; the plaster was cracked and checked during the construction of the subway. At a point opposite the northeast corner of the property the depth of the subway is 1.8 feet below the original level of the street, and at a point opposite the northwest corner the depth is 2.6 feet. The balustrade and service-drive extend across the entire frontage of the property which is about 20 feet. Claimant asks damages of $15,000.00, and the testimony of the several witnesses is as follows:

| For Claimant: | Prior to Construction Value | After Construction Value | Damages |
|---|---|---|---|
| Wesley C. Moss | $7,733.33 | $1,833.33 | $5,900.00 |
| Philip Cohn | 6,700.00 | 1,550.00 | 5,150.00 |
| C. E. Rogers | 7,000.00 | 1,800.00 | 5,200.00 |
| For Respondent: | | | |
| Forrest Beckwith | $3,668.00 | $2,018.00 | $1,650.00 |
| Frank E. Abell | 4,900.00 | 2,200.00 | 2,700.00 |
| M. L. Harris | 4,000.00 | 2,000.00 | 2,000.00 |

## TRACT No. 11—NINA B. WATKINS.
### (C. of C. No. 3292.)

This property is owned by Nina Bratton Watkins and Edgar Bratton as heirs of J. B. Bratton, deceased, who died June 27, 1936, intestate. It is stipulated that they are owners as tenants in common and that there are no outstanding interests or claims. The property is improved by a substantial two-story brick mercantile building with two mercantile rooms on the first floor and two five-room apartments above. The building had been virtually vacated in May, 1937, in anticipation of the subway construction, and on December 15, 1938, the entire property was unoccupied except one apartment, the occupant of which was not paying rent but was staying as a caretaker. Prior to the subways the stores were renting for $50.00 each per month. At the time of the hearing one was renting for $15.00 per month and the other at $11.00. The balustrade and 20-foot dead-end service-drive extend along the entire frontage of the property. At the northeast corner the street is 2.6 feet below the original grade and at the opposite corner the subway is approximately 5.4 feet below the previous level. The sidewalk and 20-foot service-drive are at approximately the original street grade line. The husband of claimant, Nina B. Watkins, testified that he is an employee at the Stock Yards, and that 75 per cent to 90 per cent of the business there is done by trucks, and that the business houses along St. Clair Avenue derive a large part of their trade from the truck drivers; the greater part of which is now lost because of the inability of truckers to gain ready access to the front of such properties. Claimant seeks an award of $28,000.00, and the testimony of the several witnesses is as follows:

|  | Prior to Construction Value | After Construction Value | Damages |
|---|---|---|---|
| For Claimant: | | | |
| Wesley C. Moss | $17,047.00 | $4,700.33 | $12,346.67 |
| Philip Cohn | 17,141.00 | 4,340.00 | 12,801.00 |
| C. E. Rogers | 15,000.00 | 4,500.00 | 10,500.00 |
| For Respondent: | | | |
| Forrest Beckwith | $ 7,824.00 | $3,912.00 | $3,912.00 |
| Frank E. Abell | 8,615.00 | 3,423.00 | 5,192.00 |
| M. L. Harris | 12,350.00 | 6,175.00 | 6,175.00 |

TRACT No. 13—ANNA ZELVIS.
(C. of C. No. 3296.)

At the time the complaint was filed this property was owned by Anna Zelvis, who died testate on March 4, 1940, and by Anna Ford. Anna Zelvis had previously shared her interest in the property with John Zelvis under joint tenancy, and upon the latter's death she became owner of such interest. It is stipulated that if an award is made for damage to this property, it can be made in favor of Anna Ford individually, Anna Ford, Executrix of the Last Will and Testament of Anna Zelvis, deceased, and Anna Ford, Administratrix of the Estate of John Zelvis, deceased. There are no liens of record. The improvements consist of a two-story frame building with asbestos shingle siding, with a store room and living quarters in the rear on the ground floor and four rooms and a bath upstairs. Considerable repairs had been made to the building between 1933 and 1937. In May of that year the property was occupied by John and Anna Zelvis. The testimony shows that a number of cracks occurred as a result of the driving of piling during the construction of the subway and that the walls became warped, the floors sagged and the doors stuck. At a point opposite the northeast corner of the property the subway is 7.7 feet below the level of the service-drive, and at the northwest corner it is 8.2 feet below the drive level. Beyond the Weiss property, which is immediately beyond the Zelvis property, there is a subway entrance with steps leading down from the service-drive so that a pedestrian may walk past the Zelvis and other properties down the steps, under the subway and up the other side, the subway being approximately 11 feet deep. Claimant seeks damages of $18,000.00 and the testimony of the several witnesses is as follows:

|  | Prior to Construction Value | After Construction Value | Damages |
|---|---|---|---|
| For Claimant: | | | |
| Wesley C. Moss | $8,566.66 | $1,580.00 | $6,986.66 |
| Philip Cohn | 8,700.00 | 945.00 | 7,755.00 |
| C. E. Rogers | 7,000.00 | 2,000.00 | 5,000.00 |
| For Respondent: | | | |
| Forrest Beckwith | $4,538.00 | $2,269.00 | $2,269.00 |
| Frank E. Abell | 4,925.00 | 1,845.00 | 3,080.00 |
| M. L. Harris | 4,425.00 | 2,212.50 | 2,212.50 |

## Tract No. 14—Rose Halloran.
### (C. of C. No. 3374.)

Claimant Rose Halloran is the owner of this property. The improvements consist of two old frame buildings, both in a bad state of repair, one being a one-story single front and the other a two-story double store-room front. The two-story building contained fourteen rooms upstairs. In May, 1937, the large building was not rented, claimant contending that prospective tenants were scared away by the proposed construction work. The last tenant had paid $35.00 per month for several years for the entire lower floor of the two-story building. In May, 1937, the small building was rented for $20.00 per month, and now produces $15.00 per month rental. The second floor of the other building when last rented produced $50.00 per month rental. The testimony shows that the traffic was formerly heavy, but does not now attempt to turn back and stop at these properties and that there are few pedestrians along the sidewalks. The balustrade and the service-drive extend along the entire frontage of this property and run into a dead end at the railroad tracks, the latter being directly beyond the line of this property. At a point opposite the northeast corner the depth of the subway is 9.9 feet, and at a point opposite the northwest corner it is approximately 6.9 feet below the original level of St. Clair Avenue. Claimant seeks an award of $20,000.00. The testimony of the several witnesses is as follows:

| | Prior to Construction Value | After Construction Value | Damages |
|---|---|---|---|
| For Claimant: | | | |
| Wesley C. Moss | $13,743.00 | $1,623.00 | $12,120.00 |
| Philip Cohn | 18,099.40 | 1,240.00 | 16,859.40 |
| C. E. Rogers | 15,000.00 | 2,000.00 | 13,000.00 |
| For Respondent: | | | |
| Forrest Beckwith | $5,085.00 | $3,051.00 | $2,034.00 |
| Frank E. Abell | 3,852.50 | 1,032.50 | 2,820.00 |
| M. L. Harris | 6,900.00 | 2,795.00 | 4,105.00 |

## Tract No. 15—Louis Goldberg.
### (C. of C. No. 3507.)

It is stipulated by the parties that title to this tract is in Louis Goldberg and Flora Goldberg as joint tenants and not as tenants in common, and that the tract is free and clear of encumbrances. The property is a good two-story brick mercantile building, with a double store room below divided

into several rooms, and apartments above. Before the subways were built, one store room was used for a hotel entrance and barber shop and the other for a restaurant, with saloon and kitchen attached, and twenty-eight hotel rooms above. Mr. Scovil still operates the restaurant and hotel, the saloon is closed and the building shows a marked appearance of neglect. Claimant has owned the property for about thirty years. He paid $20,000.00 for it and about five years later added four more rooms. The lot is 125 feet deep and the building 75 feet. The building has steam heat and immediately prior to the subway construction the entire building was producing a revenue of $280.00 per month. The testimony shows that entrance can no longer be had to the barber shop, which was located in the basement below the store room and he now receives $100.00 rental for the upstairs and the east room on the first floor. The restaurant rents for $25.00 per month.

The depression of the subway is 6.9 feet at the northeast corner of this property and the depth at the northwest corner is approximately 3.3 feet. The balustrade extends along the entire front of the property and the service-drive in front of same runs into a dead end at the Halloran property immediately adjoining these premises. While access can be had to the premises, it would be necessary for trucks that attempt to park in front of same to back out, as the service-drive is not wide enough to permit turning. The testimony of the several witnesses is as follows:

| | Prior to Construction Value | After Construction Value | Damages |
|---|---|---|---|
| For Claimant: | | | |
| Wesley C. Moss | $29,500.00 | $10,758.00 | $18,742.00 |
| T. J. Humphries | 43,500.00 | 15,940.00 | 27,560.00 |
| R. Vernon Clark | 27,350.33 | 9,144.00 | 18,206.33 |
| For Respondent: | | | |
| Forrest Beckwith | $18,370.00 | $11,022.00 | $ 7,348.00 |
| Frank E. Abell | 22,000.00 | 10,272.00 | 11,728.00 |
| M. L. Harris | 19,830.00 | 9,330.00 | 10,500.00 |

TRACT No. 16—JOSEPH C. EFFINGER.
(C. of C. No. 3505.)

It is stipulated that the property in this tract is owned by Claimant Joseph C. Effinger and Marguerite Effinger, his wife, as joint tenants and not as tenants in common, and that no other interests are involved. This property is 30 feet be-

yond the end of the nearest approach to either subway. There is no balustrade in front of the property and St. Clair Avenue widens out on a level drive the full width of the street in front of same. Cars may and do park directly in front of this property at the curb in a free and open manner. The building is a two-story brick, with two store rooms below and apartments above, as can be readily seen from the photo identified as Claimant's Exhibit No. 32. Four garages are on the rear of the lot. For many years claimants had run a confectionery in one of the store rooms and occupied the apartment above. They discontinued this business on August 15, 1940, as the business had dropped from annual sales of $14,000.00 in 1936 to $9,000.00. A large volume of their business was from night pedestrians and this traffic has been reduced, due apparently to the fact that people do not like to pass down through the subways at night. The other store room was occupied in 1937 by a harness shop at a rental of $70.00 per month and the upstairs apartment was rented for $37.50 per month. On December 15, 1938, the latter apartment was rented for $25.00 and the store room beneath is rented at $40.00 per month. When the subways were built the street in front of this property was all repaved up to First Street on the west and the sidewalks partially rebuilt, all without any expense to the property owners. Claimant seeks an award of $18.000.00 for alleged damages. Claimant does not contend that the value of the Effinger building has been affected, but contends that the value of the land has been, and that the property is not as good a business location as it formerly was. The testimony of the several witnesses shows a wide divergence of opinion; one showing no loss in value and another an actual increase in the value of the property due to elimination of traffic hazard at the railroad crossings and the improved pavement, etc. Their respective valuations are as follows:

| | Prior to Construction Value | After Construction Value | Damages |
|---|---|---|---|
| For Claimant: | | | |
| Wesley C. Moss | $16,693.00 | $13,026.00 | $3,667.00 |
| Philip Cohn | 20,935.00 | 15,935.00 | 5,000.00 |
| C. E. Rogers | 15,000.00 | 7,500.00 | 7,500.00 |
| For Respondent: | | | |
| Forrest Beckwith | $12,372.80 | $14,847.20 | *$2,474.40 |
| Frank E. Abell | 17,500.00 | 15,000.00 | 2,500.00 |
| M. L. Harris | 15,250.00 | 15,250.00 | ........ |

* Increase.

## Tract No. 17—Nellie Rodgers.
### (C. of C. No. 3481)

Title to this Tract is, by stipulation, shown to be in Nellie Rodgers with no liens or claims against same. This property is located at the northwest corner of Second Street and St. Clair Avenue with a frontage of 69½ feet on the north side of the avenue and with a depth of 128 feet on the west side of Second Street. There is a two-story brick building with 65½ feet frontage on St. Clair Avenue and about 65 feet along Second Street; the building being 40 or 45 years old. On the first floor is a large storeroom. The second floor has four three-room flats. There is a part basement but no furnace-heat in the building. The testimony shows that the location at the corner of St. Clair and First Street was regarded as one of the best in the neighborhood. Other than First Street and Second Street, there was no other cross street from St. Clair Avenue toward the north as such other streets had been vacated long prior to the construction of the subways. Entrance to Second Street may be freely had from St. Clair Avenue by using the twenty-foot service-drive for the approximate distance of the frontage of the Rodgers property. The balustrade of the subway extends from the Pennsylvania Railroad tracks in a westerly direction, a distance of 203 feet. The subway drive is depressed approximately two feet at the southwest corner of Tract No. 17. The last rental returns shown from the property prior to the improvement was from October, 1930 to September, 1935 when it was rented at $75.00 per month for the storeroom, (Exhibit 68); from November 1, 1938 to November 1, 1940 the premises were leased at $30.00 per month (Exhibit 69.) Claimant seeks $26,650.00 damages. The testimony of the several witness is as follows:

| For Claimant: | Prior to Construction Value | After Construction Value | Damages |
|---|---|---|---|
| Mr. Sexton | $32,900.00 | $ 3,751.00 | $29,149.00 |
| T. J. Humphries | 35,237.50 | 11,792.50 | 23,445.00 |
| For Respondent: | | | |
| Forrest Beckwith | $12,116.40 | $4,846.40 | $7,270.00 |
| Frank E. Abell | 6,865.00 | 2,737.50 | 4,127.50 |
| M. L. Harris | 9,460.00 | 4,730.00 | 4,730.00 |

### Tract No. 18—C. H. Ozier.
#### (C. of C. No. 3508)

Counsel have stipulated that title to the property involved in this claim is in Claude H. Ozier free and clear of encumbrance, and that any award made is to be made payable to him and to Elizabeth L. Ozier, jointly. The property is located on the north side of St. Clair Avenue and on the east side of Second Street, extending from that corner to the wall which marks the dead-end of the service-drive at the Pennsylvania Railroad tracks. The improvements at the time the subway was begun consisted of two brick store buildings, extending across the entire frontage of the property; the one along Second Street being a one-story full plate glass front with stone trimming, occupied as a grocery store, and the other being a two-story brick building, the lower floor divided into two storerooms, one occupied as a drug store and the other being vacant. The upstairs rooms were also vacant at that time. Claimant paid $28,000.00 for the west fifty feet with an old frame building and $12,000.00 for the 35 feet of ground east of same which was then improved with a one-story brick building. The buildings burned down in 1917. He thereafter put up the one-story brick building next to Second Street at a cost of $25,000.00; also a brick and concrete two-story garage in the rear, at a cost of about $2,800.00. Mr. Ozier conducted the Tri-City Grocery Company on the premises until 1924 when he sold out his business, the purchasers taking a ten-year lease on the premises. In 1934 the tenants took a month to month lease, for which they were paying $150.00 per month in 1937 when the construction of the subway was begun. At that time the two-story building was occupied by a drug store and a small dry goods store. The drug store was paying $50.00 per month rent and the upstairs $30.00 per month. Both are still occupied at a nominal rental. The Tri-City Packing Company vacated the one-story building about May, 1938, because of a lack of business. Access can be had to the premises from the 20-foot service-drive, but no traffic other than that which desires to reach these premises will use such drive, as it comes to a dead-end at the east line of claimant's property. Traffic can also reach one property along the full depth of same on Second Street. Claimant testified as to unsuccessful efforts made to rent the premises since the subway construction. Prior to the con-

struction the total rent being received for the buildings on Tract No. 18 was $250.00 per month. Thereafter the rental income was $30.00 to $35.00 per month. Claimant testified that the best use for the premises prior to the subway construction was for retail or wholesale mercantile business on the ground floor and a rooming house on the upper floor, the value of the property being primarily based on its proximity to the Stock Yards and the amount of traffic. Claimant testified that the best use for the premises since the subway construction would be some small manufacturing business or storage, the damage being primarily because of the taking away of vehicular and pedestrian traffic. The balustrade dividing the service-drive and the subway, extends from the Pennsylvania Railroad tracks at the East edge of claimant's property for 203 feet in a westerly direction to the end of the balustrade, at which point there is a sign erected by the Division of Public Highways, facing the east which reads, "No Right Turn." The depth of the depression of the subway at the southwest corner of Tract No. 18 is 8.9 feet and the depth at the southeast corner of Tract No. 18 is approximately 10.6 feet. Claimant seeks an award of $46,000.00 for damages sustained, and the testimony of the several witnesses is as follows:

|  | Prior to Construction Value | After Construction Value | Damages |
|---|---|---|---|
| For Claimant: |  |  |  |
| Wesley C. Moss | $44,675.00 | $ 5,384.00 | $39,291.00 |
| T. J. Humphries | 51,000.00 | 16,360.00 | 34,641.00 |
| R. Vernon Clark | 40,508.66 | 7,811.00 | 32,697.66 |
| For Respondent: |  |  |  |
| Forrest Beckwith | $41,047.00 | $16,419.00 | $24,628.00 |
| Frank E. Abell | 34,440.00 | 12,240.00 | 22,200.00 |
| M. L. Harris | 34,000.00 | 16,200.00 | 17,800.00 |

The foregoing completes the list of all claims, except those based upon leasehold rights; the latter will be considered as a separate group. As shown by the foregoing, there is a wide divergence of opinion as to values and damages between the several witnesses. The members of the court, in order to better understand the testimony and the exhibits, have made two personal inspections of the property. Many similar claims have come before the court in connection with the construction of public highways and safety subways throughout the State.

Where private property is not taken, but is damaged for public use, the property owner is entitled to recover the damages which his property has sustained, and the proper measure of damages in such case is the difference between the fair cash market value of the property unaffected by the improvement and its fair cash market value as affected by it. (*Dept. of Public Works* vs. *McBride*, 338 Ill. 347; *Dept. of Public Works* vs. *Caldwell*, 301 Ill. 242; *Brand* vs. *Union Elevated Co.*, 258 Ill. 133.)

Damages must be direct and proximate, and not such as are merely speculative and remotely contingent. (*Dept. of Public Works* vs. *McBride, supra.*)

The Constitution of 1848 made no provision for payment of property damaged but not taken. To remedy this, Section 13 of Article 2 of the Constitution of 1870 of Illinois was made to read:

"Private property shall not be taken or damaged for public use without just compensation."

It is sufficient (for recovery of damages) if there is a direct physical obstruction or injury to the right of user, or enjoyment by which the owner sustains some special pecuniary damage in excess of that sustained by the public generally which, by the common law, would, in the absence of any constitutional or statutory provision, give a right of action.

The above has been approved in numerous cases, including *Rockford Electric Co.* vs. *Bowman*, 339 Ill. 212. In the *City of Winchester* vs. *Ring*, 312 Ill. 544, the court, in considering a similar situation, said:

"The provision of the Constitution that private property shall not be damaged for public use was not intended to reach every possible injury that may be occasioned by a public improvement. If an obstruction or improvement does not practically affect the enjoyment or use of property not taken, and thereby impair its value, no action will lie. To sustain an action for such damages the damage must be to property and not a mere personal inconvenience or injury, such as damage to trade or business. If the injury amounts only to an inconvenience or discomfort to the occupants of the property but does not affect the value of the property, it is not within the provisions of the Constitution even though a personal action would lie therefor. The injury complained of must also be actual, susceptible of proof and capable of being approximately measured, and must not be speculative, remote, prospective or contingent. To warrant a recovery the damage must be different in kind from that sustained by the people of the whole neighborhood. If it differs only in degree from that suffered in common by the people of the neighborhood the injury is not within the provisions of the

Constitution. (*Illinois Central Railroad Co.* vs. *Trustees of Schools*, 212 Ill. 406; *Hohmann* vs. *City of Chicago*, 140 id. 226)."

Could the entire section of St. Clair Avenue that was included in the elimination of traffic hazards by construction of these subways be considered as one neighborhood, all of which suffered equally some inconvenience, but no one property to the exclusion of the others, and therefore no damages be recovered by any? While the improvement was extensive and took in a considerable extent of St. Clair Avenue, and while it is also true that the owners of some of the properties along the line of such construction have refrained from asking damages, yet the court does not believe it can properly hold that the damage to the property of claimants is not such as was contemplated in the constitutional provision above quoted.

The Supreme Court of Illinois has frequently held that where a property owner's right of access to his property has been destroyed or interfered with, he is entitled to compensation for the damage sustained. In *Hacker* vs. *City of Joliet, et al.*, 196 Ill. App. 415, the court said:

"The difficulty lies in exactly defining this right of access; that it cannot be confined to the immediate access from street on which the premises abut is clear on the authority of *Rigney* vs. *City of Chicago*, 102 Ill. 64 * * * That it cannot be extended to interference with an abutting owner's access to his property by vacating or obstructing a street two or three blocks away is equally clear from the authority of *City of Chicago* vs. *Union Bldg. Assn.*, 102 Ill. 379."

The rules governing the assessment of damages and the law fixing the measure of damages are plain, but the particular valuations of properties in different localities for the purpose of determining damages as herein alleged, is not a simple matter. The owner of property has no guaranteed assurance against diversion of traffic away from his place of business. The elimination of a curve in a highway may leave it possible for traffic to find its way to a filling station operated on a particular property, and yet the newer route may be so attractive that the main body of traffic will journey the new way. In such event no successful claim for damages could be urged by the owner of such filling station. One of the claimants herein is definitely, in the opinion of the court, in such position. The J. C. Effinger property has, to all appearances, a better street in front of it now than it had before the subways were built. No portion of either subway is in

front of this property; no balustrade interferes with access thereto, cars can pull up in front of the building, out of the main stream of traffic and freely park, and the chief complaint as to loss of trade of the business operated in the premises, is that pedestrians no longer seem to frequent the street at night because they dislike to walk down the stairs that leads through the subway. One witness, Mr. Harris, has stated that in his opinion there was no damage to the property, and one, Mr. Beckwith, was of the opinion · that this property had been increased in value by reason of the improvement to St. Clair Avenue. Injury or damage to property not taken in the construction of an improvement for which compensation is to be made, must be a direct physical injury or disturbance of a right which the owner enjoyed in connection with the property and causing damage thereto in excess of that sustained by the public generally.

The several attorneys representing the various claimants, and the Assistant Attorney General appearing for respondent, as shown by the record, have given most diligent service in presenting such record. The latter is voluminous but the court has attempted to study it in all its details and to come to a conclusion from a consideration of all such evidence and the inspection by the court of the premises in question. It is not expedient for us to quote in greater detail the extensive testimony of the witnesses.

### LEASEHOLD CLAIMS.

There are four other claims arising out of this construction, in which leaseholds are involved and where the claimants were not the owners of the fee. Those claims are as follows:

### TRACT NO. 7—RITE-PRICE GASOLINE CO.

### (C. of C. No. 3509.)

The Rite-Price Gasoline Company leased these premises from the Wiggins Ferry Company for a term of five years commencing August 1, 1934 and on May 15, 1937 was in possession of the property. The monthly rental was $55.00. Claimants had constructed certain improvements on the premises at a cost of $5,543.35 covering the equipment necessary to conduct a gasoline filling station. The total gross sales of all supplies up to May 20, 1937 was $92,923.70 after deducting Motor Fuel Tax. The testimony shows that the

total net profit to lessee from the commencement of the lease to May 20, 1937 was in excess of $25,000.00. When the subway was built the improvements were removed, as the depth of the subway at a point opposite the northeast corner of the property is 7.7 ft. and at the northwest corner of the property is approximately 1 foot below the original elevation of St. Clair Avenue and the balustrade and service-drive extend the full length of the property. The proof shows that much of the business of the claimants came from truckers bringing shipments of cattle to the Stock Yards, and that such trucks could only reach these premises with difficulty after the construction of the subway. Approximately thirty-four months of the lease had run when the construction work began and twenty-six months of the lease remained. The construction work ended December 15, 1938 leaving seven and one-half months of the lease unexpired. The claimant is an Illinois corporation and the president, Mr. Sam Bensinger, testified that they closed down their business when St. Clair Avenue was closed for the construction of the subways.

With reference to this item, it has been repeatedly held by our Supreme Court that inconvenience, expense, or loss of business necessarily occasioned to the owners of abutting property during the progress of the work by the construction of a public improvement, do not constitute damage to property not taken, within the meaning of the Constitution, but are merely a burden incidentally imposed upon private property adjacent to a public work, and without which such improvements can seldom be made and therefore give no cause of action against a municipality therefor. (*Osgood* vs. *City of Chicago*, 154 Ill. 194; *Lefkovitz* vs. *City of Chicago*, 238 Ill. 23; *Chicago Flour Co.* vs. *City of Chicago*, 243 Ill. 218; *Peck* vs. *Chicago Railway Co.*, 270 Ill. 35, 40.)

If such rule applies to a municipality, it must comply with equal force and effect to the State.

Applying the foregoing to the instant case no award could properly be made to the Rite-Price Gasoline Company for the 18½ months during which the construction work was in progress. The witness Cohn testified that the value of the leasehold at the end of the construction period, i. e. December 15, 1938, would be on the basis of $750.00 per month less 40 per cent for miscellaneous depreciation less 75 per cent further depreciation in view of the short term remaining, i. e.

seven and one-half months. According to his computation the leasehold would have a value of $112.50 per month for the seven and one-half remaining months, or a total of $843.75 (Tr. P. 460).

The Attorney General contends that the one item of profit derived by the person conducting a business at the location in dispute, is not a correct basis for determining the amount of damages to be allowed in a case of this kind. In *Louisiana R. & N. Company* vs. *Baton Rouge Brick Yard,* 136 La. 833, 67 So. 922, L. R. A. 1917 A402, the court said:

"The value of the tract for 'town lot' purposes may be one of the factors to be considered, but what the owner or purchaser might realize by a subsequent subdivision of the property and sale of lots partakes too much of the character of the speculation to serve as a basis of valuation."

In *West Chicago Park Comrs.* vs. *Boal,* 232 Ill. 248, the court said:

"The amount of business transacted or the profits of a saloon which could be carried on anywhere is not an element to be considered in determining the value of property taken by condemnation proceedings."

In *Caskey, et al.* vs. *State,* 10 C. C. R. 576, this court said:

"We, therefore, hold that the profits derived from the sale of gasoline in a filling station and of liquors and luncheons at a lunchroom and saloon are too vague, indefinite and uncertain to be received in evidence."

In *Jacksonville & S. E. Ry. Co.* vs. *Michael Walsh,* 106 Ill. 253, the court said:

"One person can do a greatly larger business in the same calling, at the same place, and under the same circumstances, than another. It may be that appellee could do double the amount of business that any other person could do. Such considerations are purely contingent, and altogether speculative, and cannot form the basis for fixing the market value of the property which the jury were required to find. * * * The true question was, what was the value of the property as it was then—not what it cost, but for how much would it sell?"

The record does not disclose what the fair cash market value of the entire property, i. e. ground and improvements, were worth before the construction of the subways and unaffected thereby, and the value of such premises immediately after the completion of such subways; nor is it possible to determine what proportionate part of such resultant damage, if any, should be apportioned to the leasehold interest of the claimant herein, as compared with the total damage to the freehold. The testimony shows that the claimant was renting the premises from the owners of the land for $55.00 per month, and that claimants had placed upon such premises

filling station equipment of a permanent character at a cost of $5,543.35. The testimony herein shows that since the construction it is practically impossible for a large truck to make a turn from the main portion of the avenue onto the service-drive or from the latter onto the highway, as the end of the balustrade would prevent such sharp turn being accomplished, and that egress and ingress to such premises is definitely interfered with. Mr. Bensinger also testified that they operate another station near the Stock Yards at which they are at present obtaining about one-half the amount of business they did at the same location in 1936. Claimants seek damages of $14,500.00 for interference with their business due to the subway construction.

Tract No. 8—Spur Dist. Co. Inc.<br>(C. of C. No. 3485.)

The next leasehold claim is that of the Spur Distributing Company, Inc. Mr. A. E. Peterson of Nashville, Tennessee, Assistant Treasurer and Secretary of this company, testified that they leased this property from the Wiggins Ferry Company in 1933 at a rental of $60.00 per month; that such rental was reduced in July, 1937 to $30.00 per month and continued at that figure until December 1, 1939 when the lease was terminated. This property is immediately west of the Rite-Price Gasoline Company's leasehold on the south side of St. Clair Avenue. The station was closed from June 27, 1937 to December 18, 1938 because of the construction work then being done on the subway. The sales of gasoline during the years the station was operated varied, for 1936 being 266,875 gallons and for the portion of 1937 operated, 111,520 gallons. For the last half of the month of December, 1938 they sold 2,961 gallons and during 1939, 142,000 gallons.

The figures on profits appear in the record and are given in considerable detail. St. Clair Avenue levels off in front of this property, it being located between the two subways. There is a wide space between the ends of the two balustrades permitting free access to the premises of the Spur Distributing Company for trucks entering or leaving such premises, the street at such point being on a level grade with the premises of claimant. Damages are sought in the sum of $19,915.26. The same comments and questions of law, as commented on in regard to Tract No. 7—the Rite-Price Gasoline Company are involved in and apply to consideration of this claim.

TRACT No. 12—E. W. MATHIS.
(C. of C. No. 3325.)

E. W. Mathis, claimant herein, was not the owner of the premises involved in this claim, but was a tenant thereof from month to month and was the owner of the improvements, same consisting of a rather dilapidated looking one-story frame building located between the Watkins and Zelvis properties above described. He valued the improvements as of May 15, 1937 at $976.50 and as of December 15, 1938 at $97.65. The testimony of other witnesses will be summarized later. Claimant contends that his damages, although on a leasehold, should consist of the depreciated value of his property by virtue of the subway construction and that the above figure represents such damage. The ground is owned by the Terminal Railroad and claimant pays $6.00 per month rent. He bought the building that was on the land in 1929 for $375.00 and has added a room from time to time since then. Claimant was occupying the buildings from May, 1937 to January, 1939. The buildings were vacant about a month and he now receives $15.00 per month rental, out of which he pays the water rent. The premises were used for a restaurant and beer parlor, and are about midway of the subway, the depth of which at the northeast corner of the property is approximately 5.6 feet and at the northwest corner of the property the depth of the subway is approximately 7.7 feet. The 20-foot service-drive and balustrade extend the full length of claimant's property and several doors beyond to the dead-end of the street at the railroad retaining wall at which point a stairway leads down under the viaduct. The property encroaches 2.58 feet at the east end of the building and 2.4 feet at the west end, on St. Clair Avenue. Similar encroachment exists by all the properties involved in these claims except Tracts No. 17, No. 18 and No. 19. The testimony of claimant's other witnesses as to values and damage is as follows:

| For Claimant: | Prior to Construction Value | After Construction Value | Damages |
|---|---|---|---|
| Wesley C. Moss | $ 976.50 | $ 97.65 | $878.85 |
| Philip Cohn | 1,600.00 | 800.00 | 800.00 |
| C. E. Rogers | 1,000.00 | 500.00 | 500.00 |

TRACT No. 19—THEISS BROS. CO.
(C. of C. No. 3378.)

Claimant is a corporation engaged in the wholesale and retail feed business. Mr. Harry Theiss is president of the corporation and testified in this case. Their business is located at 217 St. Clair Avenue and claimant owns the elevator and storage buildings and other improvements located on the property. The ground is owned by the Pennsylvania Railroad Company and claimants have made successive leases since they first took possession of the premises about 1911. Claimant is a licensed Federal Warehouse and they store large quantities of grain for other individuals and also buy and sell flour and feed out over the State, claimant hiring trucks for the delivery of such supplies. The lease under which claimant was operating when the subway was begun was dated May 31, 1933 and expired November 15, 1937. A written extension was made December 20, 1937 extending the lease for a five-year period (Claimant's Exhibits 44 and 45). Both contain a clause giving a right of cancellation upon thirty days' written notice. Claimants invested about $14,000.00 in buildings and $5,000.00 in machinery on the premises, relying upon verbal assurance from the railroad authorities that they never cancelled a lease as long as the parties complied therewith. Prior to the building of the subways all trucks had easy access to the premises and the loading platform on the north side of St. Clair Avenue. After the subways were constructed the surface of the main highway is about 9 feet below the property line at the southwest corner and approximately 2 feet below at the southeast corner. The balustrade extends along the entire front and there is a service-drive 21 feet in width in front of the property of St. Clair Avenue. As there is some open space west of the building, and this is the last property at the end of the subway, trucks and other cars can still load at the loading platform along the north edge of the service-drive and turn at the west end of such drive. Trucks and other vehicles that are passing through, of course, are separated from claimant's property by the balustrade at the top of the subway. Claimants testified to a loss of 60 per cent of their retail business since the construction of the subway. They also claim damage for the expense of $500.00 incurred in lowering their driveway and scales, made necessary on the property by the

change in grade, and seek damages of $15,000.00 for loss in value of its improvements and occupancy and $500.00 for the above item of expense.

Three parcels of land are described in the lease held by claimant, but by stipulation no claim or proof for damage to the small tract 8' x 10' is made. Claimants rely upon the language in the case of *People* vs. *Kelly*, 361 Ill. 54, wherein the court says:

"Changing the grade of a street in such a way as to obstruct ingress and egress to or from the private property of a citizen is damaging property for public use within the meaning of Section 13 of Article 2 of the Constitution of 1870."

The record and examination of the premises disclose that while entrance can still be had thereto, the traffic cannot have access to the premises in the same free manner as before the subway and balustrade were built. However, St. Clair Avenue was always an extremely busy thoroughfare, and trucks and cars which now drive in on the service-drive are removed from the congestion and hazard of the through traffic to which they were previously subjected, and in some respects and for the purposes for which the premises are used, the service-drive would appear to be a distinct benefit to the property.

Claimants contend the fact that the lease under which they held the premises expired November 15, 1937, does not affect the validity of its claim. The record shows that the practice of the Railway Company in renewing leases of this type was to all intents the equivalent of an option to the lessee to renew such lease, subject only to the reservation of cancellation on thirty days' notice, and in support of their continuing rights in the premises claimant cites the case of *Adelman* vs. *Carson, etc.*, 247 Ill. App. 574, 578, as follows:

"It will not be questioned that where a term for a fixed period is created by a lease a provision for its termination upon an event which may or may not happen before the expiration of the period specified, or a provision for its termination before the expiration of such period at the option of the lessor or lessee, will not prevent it from creating a valid term of years. (35 C. N. 972; 18 Am. & Eng. Encyc. 209; *Goodright* vs. *Richardson*, 3 Burnford & East Term Rep. 462; *Kenny* vs. *Knight*, 119 Fed. 475.) But it is urged that where, as here, the lease gives either party the right to terminate it at a certain period less than the full term of the demise it must be deemed a demise for only such period and is not binding upon either party beyond that time; that such a lease must be differentiated from one giving an option to terminate to one party only and remaining absolutely binding on the other if the option is not exercised. Cases of the latter character are *Foreman* vs.

*Hilton Co.*, 280 Fed. 608, and *Bartkowski* vs. *Hoefeld*, 226 Ill. App. 198. No case, however, has been cited on either side where the option was mutual. But discussing a like contention made in *Kenny* vs. *Knight, supra*, the court said that even if it was of the opinion that the contract before it was terminable at the will of either party, or upon reasonable notice, 'it would not follow that the agreements therein contained would not be obligatory upon the parties so long as they continued to act under such contact before revoking or terminating it.' It is seemingly irrelevant, therefore, in determining the character of the lease, that either party may terminate it, if, neither electing so to do, they may continue to act under its other provisions for its full term."

The Attorney General on behalf of the respondent contends, that as to all of the claims filed herein both of freeholds and leaseholds, no damages can be legally demanded for interference with the respective business enterprises or for annoyance and loss of business suffered by the respective claimants during the period of construction. The court is in accord with this contention, for—

"It is well settled that inconvenience, expense or loss of business occasioned to abutting owners by the temporary obstruction of a public street, and the consequent interference with their right of access to their property, made necessary by the construction of a public improvement, gives no cause of action against the municipality. The Constitution provides no remedy for the property owner under such circumstances. Such claim is not damage to property not taken, within the meaning of the Constitution. Cases cited.

> *Chicago Flour Co.* vs. *Chicago*, 243 Ill. 268, 271.
> *Glenbard Golf Club, Inc.* vs. *State*, 8 C. C. R. 65.
> *Stein, et al.* vs. *State*, 8 C. C. R. 251."

"Annotated Cases 1918B P. 876. Note.

"In case of such an injury the measure of damages is the diminution of the value of the property which is injuriously affected by the public improvement. In arriving at that damage, neither the profits of the business conducted on the premises nor the cost to the tenant of fixtures and improvements placed therein, nor the articles purchased for the purpose of enabling the lessee to conduct the business, nor diminution in the value of such fixtures, improvements or articles as are removed by the lessee, can be recovered as damages; but the increased value of the premises for rent in consequence of the putting in of such fixtures and improvements may properly be considered in computing the damages to the leasehold estate. In such a case the profits of the business are not recoverable by way of damages, but evidence that the business is profitable is admissible to illustrate and throw light on the value of the premises for rent. *Pause* vs. *Atlanta*, 98 Ga. 92, 26 S. E. 489, 58, Am. St. Rep. 290.

To the same effect see the following cases:

*Cook, etc. Co.* vs. *Chicago Sanitary Dist.*, 177 Ill. 599; 52 NE. 870; *Marshall* vs. *Chicago*, 77 Ill. App. 351; *Chicago Sanitary Dist.* vs. *McQuirk*, 86 Ill. App. 392; *Chicago* vs. *McShane*, 102 Ill. App. 239; *New York, etc. R. Co.* vs. *Blacker*, 178 Mass. 386; 59 N. E. 1020; *Voigt* vs. *Milwaukee County*, 158

Wis. 666, 149 N. W. 392; See also, *St. Louis, etc. R. Co.* vs. *Capp*, 72 Ill. 188, affirmed in 67 Ill. 607; *Leach* vs. *Philadelphia, etc. Co.*, 258 Pa. St. 522, 102 Atl. 175. Compare *Hohmann* vs. *Chicago*, 140 Ill. 226, 29 N. E. 671, 41 Ill. App. 41."

The Attorney General further contends that any lessee who took the premises with notice of the existing conditions, accepted the premises subject to such conditions with all the impairment of use that existed at such time.

The consideration of damages to the Rite-Price Gasoline Company is therefore restricted to the last seven and one-half months of their lease, but this period is affected by a cancellation of such lease as follows:

"CLAIMANT'S EXHIBIT 7-A

St. Louis, Missouri
July 16, 1937.

"Lease Agreement dated the first day of August, 1934, between The Wiggins Ferry Company, lessor, and Rite Price Gasoline Company, lessee, is hereby cancelled and terminated, effective July 31, 1937, with the understanding that the improvements belonging to the lessee will be permitted to remain upon the leased premises at the sole cost and risk of the lessee. The lessor to have the right to occupy and use and to permit others to occupy and use said premises and the improvements thereon free of rental or other charges during the construction of the St. Clair Avenue subways adjacent to said premises, and with the further understanding that upon the completion of said subways the lessor shall have the right of a renewal of said lease; however, should said lessee elect not to renew said lease it shall have the right at any time after July 31st, 1937, upon giving to the lessor 60 days' prior written notice, to remove its said improvements.

"The Wiggins Ferry Company
"By H. W. Cox,

"Approved and Accepted:                          Real Estate Agent."
"RITE PRICE GASOLINE COMPANY
"By Saml. ——————— Pres.
"Dated this 27th day of July, 1937."

The Spur Distributing Company was leasing Tract No. 8 from The Wiggins Ferry Company on a five-year lease from February 1, 1935. The lease provided that at the end of the five-year period, the lease was to continue for successive three-month periods, with a ninety-day notice clause. The company closed its station during the construction period, reopened it on December 15, 1938, and sold out to Harold C. Dunkel on December 18, 1939, at a net loss on its improvements, attributable by it to the construction work in question of $272.29.

E. W. Mathis, claimant in No. 3325—Tract No. 12, was a tenant from month to month. Counsel for claimant recog-

nizes that under the record it is difficult to determine the actual basis upon which damages should be ascertained (Brief P. 112). No damage can be awarded for the temporary period, during construction, and thereafter claimant, holding said premises on a month to month basis, held the premises, after December 15, 1938 with notice of their condition and impairment, and is not entitled to damages for such subsequent time.

Theiss Brothers Company, claimant in No. 3378—Tract No. 19, held possession under a lease expiring November 15, 1937. A written extension for five years was made December 20, 1937. Only six months of their lease remained when the construction work began, and as that was during the temporary construction period no award for such period can be made. (See *Chicago Flour Co.* vs. *Chicago*, supra).

From a consideration of the entire record, and of the law pertaining to the facts disclosed, and from the court's inspection of the several properties, we find that no award should be made to the plaintiffs in either of the leasehold claims, i. e. Rite-Price Gasoline Co., No. 3509; Spur Distributing Company, No. 3485; E. W. Mathis, et al., No. 3325; or Theiss Brothers Feed Co., No. 3378.

Awards are recommended in favor of the several claimants hereafter named as follows:

Tract No. 1—Aggie Nauyoks and Pete Antonovich, Trustee, (C. of C. No. 3504) .................................... $ 1,500.00

Tract No. 2—Earl Pollock and Victoria Pollock and Stephen D. Sexton, Trustee, (C. of C. No. 3291) ............. 10,000.00

Tract No. 3—George R. Janner, (C. of C. No. 3486) ............. 1,750.00

Tract No. 4—Mark Wedel and Wm. Casey, (C. of C. No. 3297) ... 711.05
Because of unknown ownership to an undivided 1/9th interest in these premises, the above award represents only the undivided 8/9ths share or interest of Messrs. Wedel and Casey in the amount of damages found to have resulted to these premises from the construction in question.

Tract No. 5—Louise C. Lawrence and A. C. Fritz, (C. of C. No. 3324) ...................................... 1,600.00

Tract No. 6—Rose Sokolowski, (C. of C. No. 3333) .............. 2,300.00

Tract No. 9—Martin Andrushat and Susanna Andrushat (C. of C. No. 3288) ...................................... 3,000.00

Tract No. 10—Mary Langvin and Florence Meredith (C. of C. No. 3295) ...................................... 3,000.00

Tract No. 11—Nina B. Watkins and Edgar Bratton (C. of C. No. 3292) ...................................... 8,000.00

Tract No. 13—Anna Ford; Anna Ford, Executrix of the Last Will and Testament of Anna Zelvis, Dec'd; Anna Ford, Administratrix of the Estate of John Zelvis, Dec'd), (C. of C. No. 3296)...................... 3,500.00
Tract No. 14—Rose Halloran, (C. of C. No. 3374)................ 4,200.00
Tract No. 15—Louis Goldberg and Flora Goldberg, (C. of C. No. 3507) ..................................... 12,000.00
Tract No. 16—Joseph C. Effinger and Marguerite Effinger, (C. of C. No. 3505). Claim denied. No award......... ........
Tract No. 17—Nellie Rodgers, (C. of C. No. 3481)................ 9,000.00
Tract No. 18—Claude H. Ozier and Elizabeth L. Ozier, (C. of C. No. 3508) ..................................... 25,000.00

## SUPPLEMENTAL OPINION.

## No. 3324.

*Per Curiam:*

This cause again being before the court on its own motion, and it appearing that an award was heretofore recommended in this cause on the 14th day of May, A. D. 1941 for the payment of $1,600.00 to Louise C. Lawrence and A. C. Fritz, and it appearing from a stipulation filed in said cause that this claim consists of alleged damages to two individual lots, i. e. Nos. 10 and 11, the former being at the corner of Third Street and St. Clair Avenue in East St. Louis, Illinois, and Lot No. 11 immediately adjoining said Lot No. 10, and it appearing from the evidence that each of said lots has a frontage of twenty-five (25) feet on St. Clair Avenue, but that Lot No. 10 is forty-eight (48) feet wide at the rear and has a greater area than Lot No. 11, and it further appearing from the stipulation on file that it is the desire of the parties that any award made as to Lot No. 10 should be made payable to Louise C. Lawrence and any award made for Lot No. 11 should be payable to Louise C. Lawrence and A. C. Fritz, and it appearing that a legal and equitable division of said award of $1,600.00 would be $885.67 for Lot No. 10 and $714.33 for Lot No. 11;

It Is Therefore Hereby Ordered that said award of $1,600.00 heretofore made in this cause shall be divided as follows:

To Louise C. Lawrence, for damages to Lot No. 10 as described in the complaint herein....................................... $885.67
To Louise C. Lawrence and A. C. Fritz, for damages to Lot 11 as described in the complaint herein............................ 714.33